court did not err in granting summary judgment in favor of Madison County.

   AFFIRMED.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION:  2001 FED App. 0003P (6th Cir.)
File Name:  01a0003p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

JEFFREY L. NAPIER,
        *Plaintiff-Appellant,*

          *v.*                          No. 99-6067

MADISON COUNTY,
KENTUCKY; RON DEVERE,
Jailer, Individual and Official
Capacity; DAVID O'DANIEL,
Deputy Jailer, Individual and
Official Capacity,
        *Defendants-Appellees.*

Appeal from the United States District Court
for the Eastern District of Kentucky at Lexington.
No. 98-00240—Karl S. Forester, District Judge.

Argued:  November 3, 2000

Decided and Filed:  January 4, 2001

Before:  MERRITT, WELLFORD, and SILER, Circuit
Judges.

---

**COUNSEL**

---

**ARGUED:** Joyce B. Menefee, McNEW, CARTER & MENEFEE, Newport, Kentucky, for Appellant. Carolyn C. Zerga, LANDRUM & SHOUSE, Lexington, Kentucky, for Appellees. **ON BRIEF:** Joyce B. Menefee, McNEW, CARTER & MENEFEE, Newport, Kentucky, for Appellant. Carolyn C. Zerga, LANDRUM & SHOUSE, Lexington, Kentucky, for Appellees.

---

**OPINION**

---

SILER, Circuit Judge. Former plaintiff, Jeffrey L. Napier, now Joe Napier, Administrator of the Estate of Jeffrey L. Napier, sued the Madison County, Kentucky Detention Center ("MCDC"), its Jailer, Ron Devere, and Assistant Jailer, David O'Daniel, in their individual and official capacities, seeking relief pursuant to 42 U.S.C. § 1983 alleging violations of the Fourth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and the Constitution, Laws and Administrative Regulations of the Commonwealth of Kentucky because of his denial of medical treatment while incarcerated. Napier appeals the summary judgment granted to defendants. The district court held that summary judgment was warranted for all defendants on Napier's deliberate indifference and failure to train claims under 42 U.S.C. § 1983, because he failed to prove serious deprivation. We affirm.

## I. BACKGROUND

Napier, now deceased, was arrested pursuant to a bench warrant on two counts of contempt for failure to appear on charges of operating a motor vehicle with no registration plates, failure to produce an insurance card, and two counts of

---

missing the treatment did not affect his mortality or morbidity. His medical expert testified that Napier should attend all of his treatments, but did not pinpoint any medical detriment suffered by missing the Friday dialysis. As noted, undisputed evidence shows that Napier missed more than forty dialysis treatments in the same year he was incarcerated.

In light of this evidence, Napier cannot show that the alleged deprivation is sufficiently serious, and he cannot satisfy the objective component of the applicable test from *Brown* and *Farmer*. Thus, summary judgment was proper as to his claims against the MCDC officials.

Napier devotes much of his argument to evidence that addresses the subjective component of the "deliberate indifference" test as outlined above, including what the officials knew and disregarded concerning Napier's medical condition. The district court did not consider this evidence as it held that the proof failed to satisfy the objective component of the test and thus was dispositive. It is also unnecessary to consider that evidence here.

### Madison County

The claims against Madison County also fail because Napier has not proven a serious deprivation. To recover against Madison County, he must show that his civil rights were violated pursuant to and as a direct result of the county's official policy or custom. *See Monell v. Dept. of Soc. Serv., City of New York*, 436 U.S. 658, 690-95 (1978). The burden in this regard requires a showing that the unconstitutional policy or custom existed, that the policy or custom was connected to the county, and that the policy or custom caused his constitutional violation. *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985); *Doe v. Claiborne County, Tenn*, 103 F.3d 495, 507 (6th Cir. 1996). Because the analysis concludes that Napier cannot show that he suffered an underlying constitutional violation, his claims against Madison County must also fail. Thus, the district

40 F.3d 1176, 1188 (11th Cir. 1994); *Gaudreault v. Municipality of Salem, Mass.*, 923 F.2d 203, 208 (1st Cir. 1990), *cert. denied*, 500 U.S. 956 (1991); *Monmouth County Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987), *cert. denied*, 486 U.S. 1006 (1988).

This approach seems practical and logical and will often afford the court with the best available evidence on the question of whether "the alleged deprivation is 'sufficiently serious,'" and whether the inmate "'is incarcerated under conditions posing a substantial risk of serious harm.'" *Brown*, 207 F.3d at 867 (citing and quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) Accordingly, we follow the approach taken by the First, Third and Eleventh Circuits. Specifically, we adopt the holding in *Hill* that "[a]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Hill*, 40 F.3d at 1188.

Napier argues that the district court erred in examining the effect of the delay in treatment because he was denied a scheduled treatment instead of suffering a delay. This argument attempts to draw a distinction that is unsupported by the record. Napier did miss a scheduled treatment because he was incarcerated, but his treating physician testified that he could have received his dialysis treatment when he was released from jail if he had gone to the hospital connected to the clinic where the treatment was scheduled. The fact that Napier missed his appointment does not mean that he could not have received dialysis a few hours after his scheduled appointment. It is telling that Napier did not go to the hospital seeking dialysis after he was released. Equally pertinent is the fact that Napier skipped his scheduled dialysis on the Monday following his Friday release from the MCDC.

Napier has not offered any medical evidence to show that he suffered a detrimental effect from being kept from his scheduled dialysis. His treating physician testified that

operating on a suspended license. His suit arose from his resulting incarceration in the MCDC on December 4 and 5, 1997.

At all times relevant to this case, Napier suffered from complete kidney failure. He was scheduled to receive dialysis treatment three times per week on Mondays, Wednesdays and Fridays. He had a dialysis treatment scheduled for Friday, December 5, 1997.

When Napier was brought into the MCDC, he indicated on the booking form that he required dialysis three times a week. Napier informed O'Daniel of the scheduled dialysis treatment, but indicated that missing the appointment was "no big deal" because he had "missed them before." Before O'Daniel left work that evening he told Napier who to ask for if he felt sick.

In Napier's deposition, he alleges that phone calls were made to the jail by his close friends, relatives and medical personnel who were concerned about his missing his treatment.[1] O'Daniel testified that when Napier's brother called the MCDC, the discussion only concerned bail. Napier indicated in his deposition that he repeatedly urged officials at the MCDC to allow him to attend his dialysis treatment. Napier also testified that at one point during his incarceration, officials of the MCDC threatened to chain him to a wall in the "drunk tank" if he did not quit knocking on the glass of the cell in an attempt to alert someone of his need to receive medical attention.

---

[1]Defendants argue that these assertions are inadmissible hearsay and should not be considered in reviewing the district court's opinion. Helena Asher, a registered nurse at the medical facility where Napier's treatment was scheduled to occur, stated in an affidavit that she contacted the MCDC and told the unidentified person on the phone that Napier needed to attend his treatment. Joe Napier also testified that he called the MCDC and spoke to someone about the need to get Napier to treatment. Thus, while the defendant's hearsay argument may be valid, it appears that Napier's assertions are not the only source from which to consider whether the calls were made.

On the morning of December 5, 1997, Napier appeared in Madison County District Court. At the hearing, Judge William Clouse granted Napier a furlough that allowed him to be transported to his dialysis treatment and returned to the MCDC by a relative, but no relative picked him up. At 11:00 p.m. that night, after twenty-nine hours of incarceration, Napier was released.

The medical records indicate that Napier had not appeared for his scheduled dialysis three days prior to his incarceration, did not receive scheduled dialysis on the day of his release and did not attend his scheduled dialysis that following Monday. The medical records also indicate that Napier missed forty-one scheduled dialysis treatments in 1997.

## II. DISCUSSION

### A. Standard of Review

"This court reviews a grant of summary judgment de novo, using the same Rule 56(c) standard as the district court." *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000) (citing *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir.1995), in turn citing *Hansard v. Barrett*, 980 F.2d 1059 (6th Cir.1992)). Where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law" summary judgment is appropriate. Fed.R.Civ.P. 56(c). This court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party. *See McClean*, 224 F.3d at 800 (citing *Northland Ins. Co. v. Guardsman Prods., Inc.*, 141 F.3d 612, 616 (6th Cir.1998)). "To prevail, the nonmovant must show sufficient evidence to create a genuine issue of material fact." *Id*. (citing *Klepper v. First Am. Bank*, 916 F.2d 337, 341-42 (6th Cir.1990), in turn citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). "'There must be evidence on which the jury could reasonably find for the

[nonmovant].'" *Klepper*, 916 F.2d at 342 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Thus, a mere scintilla of evidence is insufficient. *See McClean*, 224 F.3d at 800.

### B. Summary Judgment

### MCDC Officials

"Where prison [or jail] officials are so deliberately indifferent to the serious medical needs of prisoners as to unnecessarily and wantonly inflict pain, they impose cruel and unusual punishment in violation of the Eighth Amendment." *Horn v. Madison County Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). "Pretrial detainees are analogously protected from such mistreatment under the Due Process Clause of the Fourteenth Amendment." *Id*. (citing *Bell v. Wolfish*, 441 U.S. 520, 545 (1979); *Roberts v. City of Troy*, 773 F.2d 720, 723 (6th Cir.1985)).

The test to determine whether the MCDC officials acted with "deliberate indifference" has an objective and subjective component. *See Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000).

The objective component requires an inmate to show that the alleged deprivation is "sufficiently serious." As the Supreme Court explained in *Farmer*, "The inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." To satisfy the subjective component, an inmate must show that prison officials had "a sufficiently culpable state of mind."

*Brown*, 207 F.3d at 867 (citing and quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

As the district court correctly noted, three Circuits examine the seriousness of a deprivation by examining the effect of the delay in treatment. *See Hill v. Dekalb Reg'l Youth Det. Ctr,*