RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 04a0421p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

TJYMAS BLACKMORE,

                *Plaintiff-Appellant,*

    *v.*

KALAMAZOO COUNTY, et al.,

                *Defendants-Appellees.*

No. 03-2222

---

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 02-00332—Robert Holmes Bell, Chief District Judge.

Argued: September 14, 2004

Decided and Filed: December 7, 2004

Before: MOORE and CLAY, Circuit Judges; HAYNES, District Judge.[*]

---

## COUNSEL

**ARGUED:** Mark R. Bendure, BENDURE & THOMAS, Detroit, Michigan, for Appellant. Joseph Nimako, CUMMINGS, McCLOREY, DAVIS & ACHO, Livonia, Michigan, for Appellees. **ON BRIEF:** Mark R. Bendure, BENDURE & THOMAS, Detroit, Michigan, for Appellant. Joseph Nimako, CUMMINGS, McCLOREY, DAVIS & ACHO, Livonia, Michigan, for Appellees.

---

## OPINION

---

    HAYNES, District Judge. Plaintiff, Tjymas Blackmore, appeals the district court's final order dismissing his claims under 42 U.S.C. § 1983 for violations of his civil rights by Defendants, Kalamazoo County, Kalamazoo County Sheriff Thomas N. Edmonds, in his official capacity (collectively "the County"), and twenty employees of the Kalamazoo County Sheriff's Department in their individual capacities ("the Officers").[1] Blackmore asserted claims under the Eighth and Fourteenth Amendments

---

[*] The Honorable William J. Haynes, Jr., United States District Judge for the Middle District of Tennessee, sitting by designation.

[1] Plaintiff sued the following members of the County Sheriff's Department in their individual capacities: Deputy W. Misner, Deputy J. Harrison, Sergeant R. Fuller, Deputy D. Burke, Deputy J. Howke, Deputy P. Mitchell, Deputy S. Erdos, Deputy M. Gray, Deputy K. Bogart, Deputy T. Faulk, Sergeant M. Emmert, Deputy J. Charon, Deputy J. Pardee, Deputy Donna DeNoon, Deputy D. Johnson, Deputy J. MacLagan, Deputy Art Lugar, Deputy J. Slone, Deputy J. Van Zile, and Sergeant W. Lawrence.

against the County and its officers for their failure to provide prompt medical treatment for his serious medical condition, appendicitis, for over two days while Blackmore was detained in the Kalamazoo County jail.

The district court denied Blackmore's motion for summary judgment, but granted Defendants' motion for summary judgment on Blackmore's claims. The district court concluded that under *Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir. 2001), Blackmore did not present "verifying medical evidence" to prove the detrimental effect of Defendants' delay in providing Blackmore medical treatment. Blackmore asserts that his proof is sufficient to create material factual disputes on whether he had a serious need for medical care during his detention, and that such disputes require a jury trial. Based upon our review of the factual record, we conclude that the district court misinterpreted *Napier*. We **REVERSE** and **REMAND** to the district court for further proceedings consistent with this opinion.

## I. BACKGROUND

Members of the Kalamazoo County Sheriff's Department arrested Blackmore at approximately 3:30 a.m. on May 27, 2000 for driving on a suspended license. The Officers then transported Blackmore to the Kalamazoo County Jail, booked him and placed him in a cell at approximately 5:25 a.m. Within an hour of his arrival, Blackmore began experiencing abdominal pain and complained to a deputy jailor, requesting medical care. Blackmore continued to complain about this pain. An entry in the Sergeant's jail log reflects that at 5:00 p.m. on Sunday, May 28, 2000, Blackmore was "complaining of abdominal pain". About that time, jail officials gave Blackmore antacids, but did not otherwise secure medical care.

At some unidentified time on Monday, May 29, 2000, Blackmore filed a "Request for Medical Care" in which he complained of "sharp" and "extreme a[b]dominal pain in the lower area" lasting twenty-six hours for which he needed medical attention "right away". (J.A. 63). A later entry in the Sergeant's jail log reflects: (1) that at 1:30 a.m., Blackmore "stated that he is having sharp abdominal pains;" (2) Blackmore "had vomited and the antacids that were given to him earlier did not help;" and (3) that Blackmore "stated that the pains have been constant since Saturday afternoon . . . ." (J.A. 70-71). At this time, jail officials placed Blackmore into an observation cell, but did not provide any medical treatment. *Id.*

At 6:30 a.m. Monday morning, over two complete days after his first complaint of pain, a jail nurse examined Blackmore and diagnosed him as "showing classic signs of appendicitis." (J.A. 71). Blackmore was transported to a local hospital at approximately 7:00 a.m., and an appendectomy was successfully performed early that afternoon without complication.

Blackmore filed this action on May 13, 2002, asserting that the defendants violated his constitutional and civil rights. The gravamen of Blackmore's claims was that the jailors violated his constitutional rights by denying him prompt medical care for a serious medical need and that the County violated his constitutional rights by failing to implement policies and to train jailors adequately to respond to inmates' serious medical needs.

Upon completion of discovery, both parties moved for summary judgment. As noted earlier, the district court denied Blackmore's motion, but granted summary judgment to Defendants, relying principally upon *Napier v. Madison County*, 238 F.3d 739 (6th Cir. 2001). *Napier* held that an inmate who complains that a delay in medical treatment is "sufficiently serious" so as to violate his constitutional rights, must present "verifying medical evidence" to establish the detrimental effect of the delay in medical treatment. Here, the district court explained that "Plaintiff has not offered any medical evidence to show that he suffered a detrimental effect from not having his surgery earlier." (J.A. 222). The district court noted that "Plaintiff's appendix did not burst. There is no evidence of any medical complications or consequences arising from the delay of treatment." *Id.* Although noting that Blackmore needed to prove only that his "health risks . . . were increased during the period of delay to a constitutionally unacceptable degree," the

district court concluded that "[t]here is simply no medical verification that his condition worsened as a result of the delay." *Id.*

## II. ANALYSIS

### A. Standard of Review

This Court reviews *de novo* a district court's grant of summary judgment. *Terry Barr Sales Agency, Inc. v. All-Lock Co.*, 96 F.3d 174, 178 (6th Cir. 1996). Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). Upon the filing of a motion for summary judgment, the opposing party must come forth with sufficient evidence to withstand a motion for a directed verdict, *Anderson v. Liberty Lobby*, 477 U.S. 242, 247-52 (1986), particularly where there has been an opportunity for discovery, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The judge does not "weigh the evidence and determine the truth of the matter but . . determine[s] whether there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 249. For such a motion, the Court views the evidence and draws all reasonable inferences in the light most favorable to the non-moving party. *See Matsushita Elec. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

As to Blackmore's denial of medical care claim, the issue of "whether [Defendants] were deliberately indifferent is a mixed issue of law and fact. . . . The resolution of this question requires us to compare [Defendants'] conduct with a legal standard of deliberate indifference." *Williams v. Mehra*, 186 F.3d 685, 690 (6th Cir.1999) (en banc).

### B. Deliberate Indifference

The Eighth Amendment forbids prison officials from "unnecessarily and wantonly inflicting pain" on an inmate by acting with "deliberate indifference" toward the inmate's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Pretrial detainees are analogously protected under the Due Process Clause of the Fourteenth Amendment. *Bell v. Wolfish*, 441 U.S. 520, 545 (1979). Whether a convicted prisoner or a pretrial detainee, deliberate indifference to one's need for medical suffices for a claim under 42 U.S.C. § 1983. *Roberts v. City of Troy*, 773 F.2d 720, 723 (6th Cir. 1985). Prison officials' deliberate indifference violates these rights "[w]hen the indifference is manifested by . . . prison guards in intentionally denying or delaying access to medical care . . . ." for a serious medical need. *Estelle*, 429 U.S. at 104.

A constitutional claim for denial of medical care has objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Napier*, 238 F.3d at 742; *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). The objective component requires the existence of a "sufficiently serious" medical need. *Farmer,* 511 U.S. at 834; *Estelle*, 429 U.S. at 104. "As the Supreme Court explained in *Farmer*, 'the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm.' " *Brown*, 207 F.3d at 867 (quoting *Farmer*, 511 U.S. at 834).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown*, 207 F.3d at 867 (citing *Farmer*, 511 U.S. at 834). This subjective component "should be determined in light of the prison authorities' current attitudes and conduct." *Helling v. McKinney*, 509 U.S. 25, 36 (1993). Deliberate indifference "entails something more than mere negligence," *Farmer*, 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837; *see also LeMarbe v. Wisneski*, 266 F.3d 429, 435 (6th Cir. 2001). "Knowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference." *Horn v. Madison County Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994).

The district court determined that Blackmore presented sufficient proof to create a material factual issue on whether the County acted with a "sufficiently culpable state of mind" to satisfy the subjective component of the "deliberate indifference" test. The district court, however, granted summary judgment, concluding that Blackmore's proof failed to satisfy the objective element, which requires proof, using "verifying medical evidence," that his injury was "sufficiently serious." Although we agree with the district court's conclusion on the subjective factor, we disagree with the district court's conclusion on the objective factor and the district court's interpretation of *Napier*.

### 1. "Sufficiently culpable state of mind"

The district court found an issue of fact as to "when [the individual] Defendants knew the nature and duration of Plaintiff's abdominal pain, when they had reason to believe that Plaintiff required medical attention, and the length of the delay between such knowledge and Plaintiff's evaluation by a nurse." (J.A. 220, Opinion at 6). We agree. Here, Blackmore alleges that he began to complain of stomach pain within an hour of his arrival in the early morning hours on Saturday, May 27. It is undisputed that Sergeant's Log entries at 5:00 p.m. on Sunday evening and at some point on Monday morning describe Blackmore as having "sharp abdominal pain." Other undisputed facts are that Blackmore was given antacids by non-medical prison officials, that Blackmore vomited, that he was placed in an observation cell, and that he did not receive any medical attention until 6:00 a.m. on Monday morning, over fifty hours after his arrest.

Viewing these facts in a light most favorable to the Plaintiff, we conclude that a reasonable jury could conclude that Defendants were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and the Defendants ignored that risk." *Farmer*, 511 U.S. at 837. Thus, we agree with the district court that a material factual dispute exists on whether Defendants had a "sufficiently culpable state of mind" under the subjective prong of the "deliberate indifference" test.

### 2. "Sufficiently serious" medical need

As to the objective component, a serious need for medical care, *Farmer* requires only that "the inmate show that he is incarcerated under conditions posing a substantial risk of serious harm;" 511 U.S. at 834, so as to avoid "the unnecessary and wanton infliction of pain." *Id.* This Court defined this objective factor as evidence of "serious medical needs," *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994) and later noted the evidence need only show that "the medical *need* at issue is sufficiently serious." *Comstock v. McCrary*, 273 F.3d 693, 702-03 (6th Cir. 2001) (quoting *Farmer*, 511 U.S. at 834) (emphasis added).

Most other circuits hold that a medical need is objectively serious if it is "one that has been diagnosed by a physician as mandating treatment *or* one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gaudreault v. Municipality of Salem*, 923 F.2d 203, 208 (1st Cir. 1990) (emphasis added) (citing *Monmouth County Corr. Inst'l Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987)); *see also Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001); *Aswegan v. Henry*, 49 F.3d 461, 464 (8th Cir. 1995); *Hill v. Dekalb Reg'l Youth Det. Center*, 40 F.3d 1176, 1187 (11th Cir. 1994); *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980); *accord Harden v. Green*, 27 Fed. Appx. 173, 2001 WL 1464468, at *3 (4th Cir. Nov. 19, 2001). As the Eleventh Circuit observed, "[c]ases stating a constitutional claim for immediate or emergency medical attention have concerned medical needs that are obvious even to a layperson because they involve life-threatening conditions or situations where it is apparent that delay would detrimentally exacerbate the medical problem [whereas] delay or even denial of medical treatment for superficial, nonserious physical conditions does not constitute a [constitutional] violation." *Hill*, 40 F.3d at 1187-88.

In unpublished opinions, this Court has evaluated the seriousness of a prisoner's medical needs by this "obviousness" approach. *See, e.g., Taylor v. Franklin County*, 2004 WL 1595203, at *6 (6th Cir. July 14, 2004) ("Such obvious signs of recurring incontinence and debilitating immobility were clear

symptoms of a serious problem, even if Defendants did not [choose] to believe Plaintiff."); *Alexander v. Jones*, 234 F.3d 1267, 2000 WL 1562841, at *1 (6th Cir. Oct. 12, 2000) (holding that the plaintiff's glaucoma "was not so obvious that a lay person would recognize it"); *Friend v. Rees*, 779 F.2d 50, 1985 WL 13825, at *3 (6th Cir. Oct. 1, 1985) ("A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."). In addition, lower courts within this Circuit have adopted this obviousness rule. *See, e.g., Smith v. Franklin County*, 227 F. Supp. 2d 667, 677 n.10 (E.D. Ky. 2002); *Bowman v. Corr. Corp. of Am.*, 188 F. Supp. 2d 870, 885 (M.D. Tenn. 2000), *aff'd in part, rev'd in part*, 350 F.3d 537 (6th Cir. 2003); *McKinney v. Compton*, 888 F. Supp. 75, 77 (W.D. Tenn. 1995); *Meadows v. Trotter*, 855 F. Supp. 217, 218-19 (W.D. Tenn. 1994); *Inmates, Wash. County Jail v. England*, 516 F. Supp. 132, 139 (E.D. Tenn. 1980), *aff'd without op.*, 659 F.2d 1081 (6th Cir. 1981).

This "obviousness" standard for determining a serious medical need is distinct from a separate branch of Eighth Amendment decisions where the seriousness of a prisoner's medical needs "may *also* be decided by the *effect* of delay in treatment." *Hill*, 40 F.3d at 1188 (emphasis added in part); *Gaudreault*, 923 F.2d at 208; *Monmouth County*, 834 F.2d at 347. These decisions involve prisoner claims of delay in treatment that caused injury, loss, or handicap. *Hill*, 40 F.3d at 1188; *Monmouth County*, 834 F.2d at 347. Other examples involve delayed administration of medication, *see, e.g., Canady v. Wilkinson*, 90 Fed. Appx. 863, 2004 WL 232728 (6th Cir. Feb. 2, 2004); *Dozier v. Pauley*, 24 Fed. Appx. 398, 2001 WL 1563602 (6th Cir. Dec. 3, 2001); *see also Rumsey v. Martin*, 28 Fed. Appx. 500, 2002 WL 169559 (6th Cir. Jan. 31, 2002); or a prisoner's refusal to take the prescribed medication, *see, e.g., Lewis v. Turner*, 16 Fed. Appx. 302, 2001 WL 669816 (6th Cir. June 7, 2001); or occasional missed doses of medication, *Stone v. Cheboygan County*, 2002 WL 507504 (E.D. Mich. Apr. 4, 2002); or claims based on a determination by medical personnel that medical treatment was unnecessary. *See, e.g., Smith v. Franklin County*, 227 F. Supp. 2d 667, 677-78 (E.D. Ky. 2002). Also within this branch are decisions involving whether the prisoner was treated adequately. *Bright v. Martin*, 37 Fed. Appx. 136, 2002 WL 818298 (6th Cir. Apr. 29, 2002); *Love v. Taft*, 30 Fed. Appx. 336, 2002 WL 104749 (6th Cir. Jan. 24, 2002); *Powell v. Messary*, 11 Fed. Appx. 302, 2001 WL 303367 (6th Cir. Mar. 19, 2001) or whether any delay in providing medical care was harmless, *Craw v. Gray*, 159 F. Supp. 2d 679 (N.D. Ohio 2001), or where the prisoner had a "very minor injury for which many people outside prison would not even think of seeking outside medical treatment." *See, e.g., Nickens v. Anderson*, 56 Fed. Appx. 244, 245, 2003 WL 344214 (6th Cir. Feb. 13, 2003); *see also Wright v. Taylor*, 79 Fed. Appx. 829, 2003 WL 22474614 (6th Cir. Oct. 29, 2003) (decaying tooth); *Lawless v. Muskingum County*, 36 Fed. Appx. 192, 2002 WL 1272120 (6th Cir. June 6, 2002) (knee injury for which it was merely "preferable" that plaintiff receive treatment); *Jennings v. Al-Dabagh*, 275 F. Supp. 2d 864 (E.D. Mich. 2003) (foot infection from which plaintiff suffered "minor discomfort"). *Accord Martin v. Gentile*, 849 F.2d 863 (4th Cir. 1988) (glass splinter in prisoner's palm and "minor" cuts and bruises that required neither stitches nor painkillers); *Shabazz v. Barnauskas*, 790 F.2d 1536 (11th Cir. 1986) (shaving bumps).

As reflected by its facts, *Napier* involved a claim about the effect of the delay in receiving medical treatment. In *Napier*, an arrestee suffering from kidney failure was kept from his scheduled dialysis while incarcerated for twenty-nine hours. 238 F.3d at 741. The evidence showed that he missed forty-one of his thrice-weekly dialysis treatments in 1997, including a treatment session scheduled three days prior to his incarceration and the session following his release, and that he even told a prison guard that he had an appointment that day but missing it was "no big deal" because he had "missed them before." *Id*. In affirming summary judgment for the defendants, this Court adopted the analytical approach of *Hill, Gaudreault*, and *Monmouth County* by examining the effect of the delay in treatment. *Id*. at 742. In adopting this "practical and logical" approach, we held that " '[a]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed.' " *Napier*, 238 F.3d at 742 (quoting *Hill*, 40 F.3d at 1188). Because the plaintiff in *Napier* did not present medical evidence that he was harmed by the delay in treatment, and because as his doctor testified, plaintiff could have received

treatment immediately upon his release yet failed to do so, we affirmed the dismissal of the action. *Id*. at 742-43.

In sum, the "verifying medical evidence" requirement is relevant to those claims involving minor maladies or non-obvious complaints of a serious need for medical care. *Napier*, which was relied upon by the district court, falls within this branch of decisions. In a word, *Napier* does not apply to medical care claims where facts show an obvious need for medical care that laymen would readily discern as requiring prompt medical attention by competent health care providers. *Napier* applies where the plaintiff's "deliberate indifference" claim is based on the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious. In such circumstances, medical proof is necessary to assess whether the delay caused a serious medical injury. *Napier*, 238 F.3d at 742.

In dismissing this action, the district court noted that Blackmore's appendix did not burst, and that there was "no evidence of any medical complications or consequences arising from the delay of treatment . . . [or] that the delay contributed to the size or appearance of his surgical scar. There simply is no medical verification that his condition worsened as a result of the delay." (J.A 222). A determination that Blackmore's appendix ruptured is not a prerequisite for his Eighth Amendment right to avoid the pain from the officers' deliberate indifference to his obvious need for medical care.

Defendants were not preventing Blackmore from attending a regularly-scheduled treatment. In *Napier*, the prisoner did not complain about missing treatment; told prison guards that missing a treatment was "no big deal"; missed over forty treatment sessions of his own accord; and neither sought immediate medical attention upon his release nor even attended his next scheduled treatment. The facts of this case differ greatly from those in *Napier*, where the injury to the prisoner's kidney condition could not be discerned without competent medical proof.

The facts here are further distinguishable from *Napier* in that Blackmore's claim falls under the "obviousness" line of decisions. Here, Blackmore did not suffer from a long-term and well monitored illness, but rather exhibited obvious manifestations of pain and injury. Blackmore complained of "sharp" and "severe" stomach pains for an extended period of time. Significantly, Blackmore vomited – a clear manifestation of internal physical disorder. The jailers deemed Blackmore's condition sufficiently serious to place him in an observation cell. Blackmore complained orally and in writing for over two days before receiving medical treatment. With these facts, a jury could reasonably find that Blackmore had a serious need for medical care that was "so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Gaudreault*, 923 F.2d at 208.

As the Supreme Court has held, the test for deliberate indifference is whether there exists a "*substantial risk* of serious harm," *Farmer*, 511 U.S. at 837 (emphasis added), and does not require actual harm to be suffered. *See also Smith v. Carpenter*, 316 F.3d 178, 189 n.15 (2d Cir. 2003) (observing that "actual physical injury is not necessary in order to demonstrate an Eighth Amendment violation" and declining to adopt a *per se* rule that such injury is required) (citing in part *Helling v. McKinney*, 509 U.S. 25, 35 (1993)). Where the seriousness of a prisoner's needs for medical care is obvious even to a lay person, the constitutional violation may arise. This violation is not premised upon the "detrimental effect" of the delay, but rather that the delay alone in providing medical care creates a substantial risk of serious harm. When prison officials are aware of a prisoner's obvious and serious need for medical treatment and delay medical treatment of that condition for non-medical reasons, their conduct in causing the delay creates the constitutional infirmity. In such cases, the effect of the delay goes to the extent of the injury, not the existence of a serious medical condition. Blackmore was suffering from appendicitis, and it is sufficient that the officers' delay in treatment of an obvious medical emergency posed a substantial risk of serious harm to Blackmore by subjecting him to unnecessary infliction of pain.

To the extent our previous opinions would benefit from clarification, we hold today that where a plaintiff's claims arise from an injury or illness "so obvious that even a layperson would easily recognize

the necessity for a doctor's attention," *Gaudreault*, 923 F.3d at 208, the plaintiff need not present verifying medical evidence to show that, even after receiving the delayed necessary treatment, his medical condition worsened or deteriorated. Instead, it is sufficient to show that he actually experienced the need for medical treatment, and that the need was not addressed within a reasonable time frame. This is precisely what occurred here – after Blackmore suffered for two days, making unrelenting complaints and vomiting, a nurse identified "classic signs of appendicitis" and doctors performed an appendectomy.

In sum, we conclude that Blackmore presents sufficient evidence from which a jury can infer that his obvious need for medical care was "sufficiently serious" and that the Officers had a "sufficiently culpable state of mind." Accordingly, summary judgment on this claim is reversed.

### C.  Liability of the County

The district court granted summary judgment to the County determining that because Blackmore failed to satisfy *Napier's* verifying medical evidence requirement in his claim against the individual defendants, Blackmore's claim against the County failed as a matter of law.

A municipality or county cannot be liable under § 1983 absent an underlying constitutional violation by its officers. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). A municipality can be liable under 42 U.S.C. § 1983 only if the plaintiff can demonstrate that his civil rights have been violated as a direct result of that municipality's policy or custom. *Monell v. N.Y. City Dept. of Soc. Servs.*, 436 U.S. 658, 694 (1978). Liability may also be imposed upon the city or county where such failure to train amounts to deliberate indifference toward a detainee's serious needs for medical care. *See City of Canton v. Harris*, 489 U.S. 378, 392 (1989). Yet, liability can arise and deliberate indifference can be shown by proof that the city or county "knows that inmates face a substantial risk of serious harm and disregards the risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847 (emphasis added).

A review of the record reveals that Blackmore presented evidence that the County did not have a formal written policy on how to deal with prisoner illnesses, and that the jail's practice was not to provide a substitute nurse if the on-duty nurse calls in sick, resulting in times when a nurse is not on duty. Because we hold that verifying medical evidence is not required to state a claim for deliberate indifference where, as here, the seriousness of prisoner's need for medical care is obvious, and because the record presents an issue of fact regarding the total lack of any County policies, practices, and adequate training for this type of constitutional claim, and regarding whether the harm complained of resulted from the County policies, or lack thereof, we reverse the district court's grant of summary judgment for the County.

### III.  CONCLUSION

For the foregoing reasons, the district court's grant of summary judgment to the Defendants is **REVERSED**, and this action is **REMANDED** to the district court for further proceedings consistent with this opinion.