NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0784n.06
Filed: December 24, 2008

No. 06-4136

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| RICARDO V. DODSON, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| REGINALD A. WILKINSON, et al., | ) | SOUTHERN DISTRICT OF OHIO |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |

Before: GIBBONS and COOK, Circuit Judges; and STEEH, District Judge.*

**GEORGE CARAM STEEH, District Judge.** In a complaint filed against various Ohio

State Corrections Officials, prisoner Ricardo Dodson alleged that delays in testing and treatment for

Hepatitis C violated his Fourth, Fifth, Sixth, and Fourteenth Amendment rights and constituted

deliberate indifference to his need for medical care in violation of the Eighth Amendment of the

Constitution. The district court granted summary judgment in favor of the defendants. Because we

find no constitutional violations, we affirm the district court's decision.

I.

Ricardo Dodson, an inmate at the Richland Correctional Institution ("RCI") in Mansfield,

Ohio, filed a *pro se* complaint on October 17, 2003 against Ohio Department of Rehabilitation and

---

*The Honorable George Caram Steeh, United States District Judge for the Eastern District
of Michigan, sitting by designation.

Corrections ("ODRC") Director Reginald Wilkinson, RCI Health Care Administrator Brian Cain, and "John Doe" defendants, alleging Wilkinson adopted an ODRC policy on November 9, 2001, regarding inmate testing and treatment for Hepatitis C. The policy requires testing new inmates, but not inmates such as Dodson who were incarcerated before November 9, 2001. Dodson allegedly was not tested for Hepatitis C when he was first incarcerated at the ODRC's Warren Correctional Facility in 1991. While an inmate at RCI, Dodson was referred for Hepatitis C testing on May 10, 2003, by a prison mental healthcare doctor and tested positive for the virus on June 26, 2003. An RCI treating physician, Dr. Williams, allegedly told Dodson that, pursuant to the ODRC policy, Dodson would not receive treatment for the virus until his liver showed signs of cirrhosis or failure. Dr. Williams allegedly examined Dodson again on September 26, 2003, and ordered additional testing. Dodson claims that he suffers from Hepatitis C symptoms of "intestinal and abdominal pain, headaches, nausea, decreased appetite, muscle and joint aches, weakness, fatigue, high cholesterol, depression, [and] flu-like symptoms," all allegedly without receiving medical treatment.

Wilkinson and Cain were alleged to be liable under 42 U.S.C. § 1983, in both their individual and official capacities, for violating Dodson's Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment rights by intentionally delaying and denying Dodson and other ODRC prison inmates immediate Hepatitis C testing, treatment, and education. Dodson alleged additional claims of conspiracy, medical malpractice, negligence, and gross negligence against Wilkinson, Cain, and the "John Doe" defendants. Dodson alleged separately as "future injuries" his "risk for developing cirrhosis, liver failure, liver cancer, and the reduced likelihood of responding to treatment, thereby leading to death." Dodson's demand for relief included "immediate first class medical treatment,"

injective relief requiring the ODRC to test and treat all prison inmates for Hepatitis C, and compensatory and punitive damages.

On September 7, 2004, and over Dodson's objections, the district court accepted a magistrate judge's Report and Recommendation and granted Wilkinson's and Cain's motion for summary judgment. It determined that these defendants could not be held liable under § 1983 because they were not personally involved in Dodson's testing or medical treatment. The district court further found that, even if they were involved, Dodson's Eighth Amendment claim of deliberate indifference to serious medical needs failed because it was beyond dispute that Dodson has been receiving Hepatitis C testing and treatment since he was first diagnosed with the virus on June 26, 2003. The district court also concluded that Wilkinson and Cain could not be held legally responsible for the November 9, 2001 Hepatitis C policy because it was beyond dispute that ODRC Medical Director Dr. Bruce Martin, not Wilkinson or Cain, had developed and implemented the policy. The district court granted Dodson's motion for leave to add Dr. Martin as a "John Doe" defendant to the extent Dodson alleged an Eighth Amendment claim that he would not have contracted the Hepatitis C virus but for the ODRC policy. The district court denied, without prejudice, Dodson's motion for appointment of a medical expert pending a determination of Dodson's final course of treatment. The district court also granted Dodson's motion to compel disclosure of all of his mental health records, but denied Dodson's request for discovery sanctions. Dodson's state law claims of medical malpractice, negligence, and gross negligence were dismissed, without prejudice, after the district court declined to exercise supplemental jurisdiction over the claims.

Dodson moved for appointment of counsel on April 5, 2005, for the purpose of assisting him at a requested hearing. The motion and request for hearing were denied on March 28, 2006.

On August 8, 2006, the district court accepted a second Report and Recommendation, and granted summary judgment in favor of the remaining defendant, Dr. Martin. The district court overruled Dodson's objection that the magistrate judge misapplied *Napier v. Madison County*, 238 F.3d 739 (6th Cir. 2001), finding that Dodson failed to introduce sufficient medical records to show that he suffered a requisite "detrimental effect" resulting from not being tested or treated for Hepatitis C from 1999, when Dr. Martin became the ODRC Medical Director, until the Hepatitis C policy was implemented by Dr. Martin on November 9, 2001. The district court also determined that Dodson failed to proffer sufficient evidence to show that he suffered a "detrimental effect" as a result of any delay in testing or treatment under the 2001 Hepatitis C policy, given Dr. Martin's attestations that Dodson was diagnosed with Stage 1 Hepatitis C and is unlikely to progress to a need for treatment in less than 10 to 20 years.

## II.

Dodson challenges the dismissal of his claims on summary judgment. This court reviews *de novo* a district court's grant of summary judgment. *Minadeo v. ICI Paints*, 398 F.3d 751, 756 (6th Cir. 2005). Summary judgment is appropriate if no genuine issue of material fact exists on the record and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In deciding a motion for summary judgment, the evidence and all reasonable inferences are viewed in a light most favorable to the nonmoving party. *Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## A.

Absent a request for certification of this matter as a class action lawsuit under Rule 23, Dodson's claims challenging the ODRC Hepatitis C testing and treatment policy are limited to

alleged violations of his own constitutional rights. *Newsome v. Norris*, 888 F.2d 371, 381 (6th Cir. 1989). Dodson "lacks standing to assert the constitutional rights of other prisoners." *Id*. *Pro se* prisoners generally may not bring class action lawsuits concerning prison conditions. *Dean v. Blanchard*, 865 F.2d 257 (6th Cir. 1988) (Table) (citing *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975)). Dodson lacks standing to seek injunctive relief on behalf of all ODRC inmates, and therefore his claims and arguments on appeal are limited to alleged violations of his own constitutional rights.

The Eighth Amendment is Dodson's proper source for relief. The Eighth Amendment protects prison inmates against deliberate indifference to their serious medical needs, regardless of how that deliberate indifference is evidenced. *Estelle v. Gamble*, 429 U.S. 97, 104-105 (1976) (noting that the "deliberate indifference" standard of the Eighth Amendment applies "whether the indifference is manifested by prison doctors in their response to the prisoner's needs, or by . . . intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed."). "Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). The Eighth Amendment is the primary source of substantive protection to a prison inmate alleging the denial of medical care. *Whitley v. Albers*, 475 U.S. 312, 319, 327 (1986) (citing *Estelle*, 429 U.S. at 104); *see also Walker v. Norris*, 917 F.2d 1449, 1455 (6th Cir. 1990) (recognizing that the reasoning of *Graham* applies "in the context of claims arising under the eighth amendment."). Dodson's invocation of Fourth Amendment, Fifth Amendment, Sixth Amendment,

and Fourteenth Amendment rights to Hepatitis C testing and treatment as a state prisoner is conclusory and unavailing. *See Lillard v. Shelby County Bd. of Ed.*, 76 F.3d 716, 726 (6th Cir. 1996).

B.

To succeed on his Eighth Amendment claim, Dodson must be able to prove "'deliberate indifference' to his 'serious' medical needs." *Wilson v. Seiter*, 501 U.S. 294, 297 (1991) (quoting *Estelle*, 429 U.S. at 106). An Eighth Amendment claim of denial of medical care has both objective and subjective components, the objective component requiring proof of a "sufficiently serious" medical need, and the subjective component requiring proof of "a sufficiently culpable state of mind in denying medical care." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle*, 429 U.S. at 104; and *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000)). "[A] medical need is objectively serious if it is 'one that has been diagnosed by a physician as mandating treatment *or* one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Blackmore*, 390 F.3d at 897 (quoting *Gaudreault v. Mun. of Salem*, 923 F.2d 203, 208 (1st Cir. 1990) (emphasis in original)). With regard to the subjective component:

> [T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Knowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs is essential to a finding of deliberate indifference.

*Blackmore*, 390 F.3d at 896 (quoting *Farmer*, 511 U.S. at 837; and *Horn v. Madison County Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994)) (internal quotations omitted).

An Eighth Amendment claim may be premised on deliberate indifference to exposing an inmate to an unreasonable risk of serious harm in the future. *Helling v. McKinney*, 509 U.S. 25, 36 (1993). A claim of deliberate indifference to future serious harm requires proof of both the objective and subjective elements of an Eighth Amendment claim. *Id*. at 35. An alleged delay in receiving treatment requires an examination of the effects of the delay. *Napier*, 238 F.3d at 742. "[A]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Id*. (quoting *Hill v. DeKalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1188 (11th Cir. 1994)).

Contrary to Dodson's allegations, the record demonstrates that Dodson has received continuous testing and treatment since being diagnosed with Hepatitis C on June 26, 2003. Dodson received testing and a chronic liver disease baseline evaluation in December 2003, which lead to his vaccination against Hepatitis A and Hepatitis B, more testing, and his enrollment at the Chronic Care Clinic. A liver biopsy was performed at the Ohio State University Hospital in February 2004, which, according to Dr. Martin, "indicated that [Dodson] has a Histologic Grade 1 of 4, which means that he has minimal inflammatory activity and no hepatocyte necrosis (or no liver cell death), and Histologic Stage 1 of 4, which means that he has minimal fibrosis and no bridging fibrosis." Dr. Martin also stated in his March 16, 2004 affidavit that: "[e]ven though his disease is expected to progress over the next 20 to 30 years it may not progress at all"; the testing "results and [Dodson's] prognosis indicate that he should be continuously monitored and re-evaluated by a repeat liver biopsy every three to five years"; and "[b]ased on the results of the biopsy, it is unnecessary for [Dodson] to receive any kind of medication at this time." Dr. Robert Kirkpatrick, Chief of the Liver Clinic at

the Ohio State University Medical Center, wrote in an August 19, 2004 memorandum to Dr. Martin

Akusoba of the Corrections Medical Center:

> A quick note on this patient [Ricardo Dodson] who was seen in the Liver Clinic in consultation on August 18, 2004. He has chronic hepatitis C and has been incarcerated for a number of years. No history of depression. No history of drugs, cocaine, transfusion. He is asymptomatic but occasional nausea. No fever or chills, nausea or vomiting. No history of depression. No change [sic] of obviously of getting anyone pregnant. Past medical history - Asthma. Past surgical history - None. Allergies - none. Medications - Azmacort. Social history - Incarcerated. Family history - Unremarkable. No liver disease. Review of systems [sic, symptoms?] is negative.
>
> . . . . [Dodson] has a high viral load. He is genotype I-A. Biopsies showed no inflamation and no fibrosis. At this point, the risks and indications for treatment were discussed with the patient. I think they [sic] are two very reasonable options, one is treatment and one is repeat biopsy in three years to see if there is any progression of his disease. In discussion with the patient, he indicates that he wants to go ahead with treatment. I think this is not unreasonable and I would start him on treatment on Pegasys 180 mcg per week and ribavirin 1200 mg per day. He needs labs checked every week for the first month and every month after that. He can be followed up in the medical clinic. His chance of response is about 20-25%, but may, however, as he understands, be decreased since he is on the Azmacort which is a steroid.

On this record, Dodson cannot prove that the ODRC, through Dr. Martin, was deliberately and culpably indifferent to a need for testing and treatment after Dodson was first objectively diagnosed with the Hepatitis C virus on June 26, 2003. *See Blackmore*, 390 F.3d at 895, 897.

Dodson has failed to proffer verifying medical evidence of a "detrimental effect" caused by a delay in treatment that exposes Dodson to an unreasonable risk of serious harm in the future. *See Helling*, 509 U.S. at 25; *Napier*, 238 F.3d at 742. After Dodson's need for medical testing and treatment became objectively serious on June 26, 2003, Dodson was evaluated by Dr. Williams on September 26, 2003, referred for further testing, and ultimately was tested and evaluated in December 2003. After testing, Dodson was referred to the Chronic Care Clinic, was given a liver

biopsy in February 2004, was diagnosed as having Stage 1 Hepatitis C, and thereafter received a course of treatment notwithstanding Dr. Martin's opinion that it was unnecessary to administer medication to Dodson as of March 16, 2004. Dodson's disagreement with the testing and treatment he has received since being diagnosed with Hepatitis C does not rise to the level of an Eighth Amendment violation. *Estelle*, 429 U.S. at 107; *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976) (recognizing that "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.").

Dodson's proffered medical records dating back to 1991 do not support a finding of a "detrimental effect" arising from a delay in testing him for Hepatitis C until May 10, 2003. The medical records do not indicate that Dodson was suffering from an objectively serious medical need from 1991 until he was tested for the Hepatitis C virus in May 2003. *See Blackmore*, 390 F.3d at 897. From 1991 through May 2003, Dodson complained of a number of medical conditions, including low blood sugar, stomach pains, asthma, ulcers, irritable bowel syndrome, allergies, and dizzy spells. On each occasion, Dodson received timely medical treatment. To the extent any one of these conditions could have been viewed by a physician as a symptom of Hepatitis C, the failure to make the diagnosis sooner than June 26, 2003, would at best amount to medical malpractice, not deliberate indifference actionable under the Eighth Amendment. *Estelle*, 429 U.S. at 107; *Westlake*, 537 F.2d at 860 n.5. Given Dr. Kirkpatrick's uncontested impression that Dodson was "asymptomatic [with] occasional nausea" as of August 19, 2004, reasonable jurors could not conclude that Dodson was suffering from an objectively serious medical need prior to testing in May 2003. Consequently, reasonable jurors could not conclude that, prior to May 2003, ODRC doctors

were deliberately indifferent to unreasonable risks of future harm to Dodson caused by Hepatitis C. *See Blackmore*, 390 F.3d at 897; *Helling*, 509 U.S. at 36; *Napier*, 238 F.3d at 742.

Dodson's allegation that the November 9, 2001 Hepatitis C policy implemented by Dr. Martin provided that only new prison inmates would be tested for Hepatitis C is belied by the record. Under the November 2001 policy, inmate eligibility for Hepatitis C testing includes screening asymptomatic inmates having one or more risk factors, such as IV or inter-nasal drug use, a blood transfusion before June 1992, a history of HIV infection or having a partner with the HIV infection, a history of hemodialysis, or a history of hemophilia. Inmates are also eligible for Hepatitis C testing under the 2001 policy based on diagnostics, as was the case with Dodson. The policy also expressly provides: "This protocol is not intended to be a substitute for professional judgment by the attending physician[.]" As applied to Dodson, the November 9, 2001 Hepatitis C policy cannot reasonably be construed as deliberately indifferent to diagnosing and treating Dodson for Hepatitis C. Construing the November 2001 Hepatitis C policy as a whole, and as applied to Dodson, that part of the protocol providing for the screening of elevated alanine aminotransferase levels in new inmates does not evince a culpable state of mind of deliberate indifference toward Dodson's objective medical condition and receipt of treatment as a resident prisoner since 1991.[1] *See Blackmore*, 390 F.3d at 895.

Dodson's argument that the district court granted summary judgment without ruling on the constitutionality of the Hepatitis C policy is without merit. The district court ruled that the policy

---

[1] To the extent Dodson advances an equal protection argument under the Fourteenth Amendment, Dodson has failed to allege or identify his membership in a protected class. As recognized by a district court addressing virtually the same claims alleged by Dodson, "prisoners are not a 'protected class' for equal protection purposes." *Dotson v. Wilkinson*, 477 F. Supp. 2d 838, 851 (N.D. Ohio March 12, 2007) (citing *Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997)).

implemented by Dr. Martin, and as applied to Dodson, did not constitute deliberate indifference to Dodson's need for medical care. Dodson's assertion that the policy "denies necessary life saving treatment" is baseless. Dodson's assertion that the district court improperly dismissed Wilkinson from this lawsuit on finding that Wilkinson did not treat him, when Dodson was instead suing Wilkinson in his official capacity for adopting the Hepatitis C policy, fails on this court's *de novo* determination that the policy as applied to Dodson does not violate the Eighth Amendment.

III.

Dodson also challenges the district court's denial of his motions for the appointment of counsel, for appointment of an expert witness, and for discovery sanctions. The denial of a motion for appointment of counsel is reviewed for an abuse of discretion. *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993). District courts also enjoy discretion in deciding whether to appoint an expert witness, *Fugitt v. Jones*, 549 F.2d 1001, 1006 (5th Cir. 1977); Fed. R. Evid. 706(a), and whether to grant discovery sanctions. *Lavado*, 922 F.2d at 604; *Ventura v. The Cincinnati Enquirer*, 396 F.3d 784, 789 (6th Cir. 2005). An abuse of discretion exists if a decision is based on an erroneous conclusion of law or clearly erroneous findings of fact, or is clearly unreasonable or arbitrary. *Youn v. Track, Inc.*, 324 F.3d 409, 420 (6th Cir. 2003).

The district court reasonably denied Dodson's motion for appointment of counsel to assist him at a hearing after denying Dodson's request for the hearing. The court notes that Dodson has been more than able in advancing his claims in pleadings and briefs. The district court reasonably denied Dodson's motion for appointment of a medical expert, without prejudice, pending a determination of Dodson's final course of treatment. The district court reasonably concluded on September 7, 2004 that Dodson was receiving ongoing medical testing and treatment. The district

court reasonably denied sanctions after compelling the disclosure of Dodson's mental health records. There was no abuse of discretion.

IV.

We affirm the judgment of the district court.