Thomas J. CALHOUN, a/k/a John
Arthur Orr, Plaintiff

v.

VOLUSIA COUNTY, et al., Defendants.

No. 6:04–cv–106–Orl–31DAB.

United States District Court,
M.D. Florida,
Orlando Division.

Aug. 13, 2007.

Thomas J. Calhoun, Mineral Wells, TX, pro se.

Nancye R. Jones, Volusia County Legal Department, Deland, FL, Todd Michael Cranshaw, Cranshaw Law Firm, Ormond Beach, FL, for Defendants.

## ORDER

PRESNELL, District Judge.

On July 9, 2007, Magistrate Judge Baker entered a Report and Recommendation (Doc. 137), recommending that the Motion for Summary Judgment filed by Defendants Halifax Medical Center and John Smyth (Doc. 104) be GRANTED. Plaintiff filed timely objections to the Report (Doc. 140) and Defendants responded (Doc. 142). Upon *de novo* review of the above, and for the reasons stated herein, this Court concurs with the recommendation of the Magistrate Judge.

## I. Statement of Facts

At all times relevant to this action, Plaintiff was an inmate at the Volusia County Detention Center ("VCDC"), Defendant Halifax Medical Center ("Halifax") was a governmental entity which had contracted to "maintain responsibility in the provision of medical care to prisoners" in the custody of the Volusia County Department of Corrections, and Defendant Joseph P. Smyth ("Dr. Smyth") was the Medical Director Physician and Supervisor of the infirmary at the VCDC. The following statement of facts is presented in the light most favorable to the Plaintiff:

At 6:00 a.m. on May 16, 2003, Plaintiff was brought into the infirmary at VCDC in a wheelchair. (Doc. 111 at 7). The officer who brought him to the infirmary told the nurse that he observed Plaintiff on the floor of his cell moaning, vomiting blood and complaining of severe abdominal pain and right flank pain. (Doc. 111 at 7). Plaintiff was seen by Registered Nurse Anita Macdonald ("Macdonald"). (Doc.

111 at 3). Macdonald contacted Physician's Assistant Rafat Iskander who, over the telephone, directed MacDonald to place Plaintiff in isolation for observation and put him on an all liquid diet. (Doc. 111 at 3; Doc. 111–2 at 6). At 3:42 p.m. on May 16th, Plaintiff signed a form refusing the liquid diet and isolation. (Doc. 111–2 at 5; Doc. 111 at 7). Plaintiff states that he signed this refusal because he wanted to be seen by a doctor or to be able to make a phone call to his family. (Doc. 111 at 7; Doc. 140 at 7). Plaintiff was kept in isolation anyway and continued vomiting throughout the night of the 16th and into the morning of the 17th. (Doc. 111 at 7). Plaintiff then submitted a "Sick Call Request Form" on May 17th, while he was in isolation, stating that he had "either gall bladder or bowel movement problems, [was] throwing up all night, [and had] stomach pains clear to kidneys." (Doc. 111 at 8; Doc. 104–3 at 1). By the afternoon of the 17th, having no food in his stomach for over 24 hours, Plaintiff stated that he was "feeling better although starved." (Doc. 111 at 4). At 4:50 p.m. on May 17th, Plaintiff agreed to the liquid diet. However, Plaintiff's symptoms of pain and vomiting returned on the morning of May 18th, and he was examined by Registered Nurse Montgomery at approximately 11:00 a.m. (Doc. 111 at 8; Doc. 111–2 at 15). At this time, Dr. Smyth was contacted via telephone and ordered that Plaintiff be transported to the Halifax Medical Center ("HMC") Emergency Department immediately. Plaintiff was admitted to HMC at 9:18 p.m. on May 18, 2003.

On May 20, 2003 Plaintiff underwent surgery to remove his gallbladder at HMC, and on May 22nd he was discharged from HMC and returned to VCDC. (Doc. 111 at 8). Plaintiff's surgeon, Dr. Fenster, sent the following instructions to Dr. Smyth regarding Plaintiff's postoperative

care: Plaintiff was to receive 5 to 10 mg of Roxicet (a narcotic pain medication) every 4 to 6 hours as needed and 500 mg of the antibiotic Ciprofloxacin daily for 7 days; his bandages were to be changed daily or as needed; he was to refrain from lifting, carrying or exercising for 2 months; and he was to remain on a low fat diet for two weeks. (Doc. 111–2 at 22–24).

Plaintiff contends that he did not receive his medications "but every so often", that his bandages were never changed, that he was not put on a low fat diet, and that Dr. Smyth never communicated to the staff at VCDC that he was not supposed to do any lifting, carrying or exercising for two months. (Doc. 111 at 5, 9). Plaintiff instead alleges that he was kept in the infirmary until May 25, 2003, where he received little to no medical care and was then released back into the general population with no special instructions. (Doc. 111 at 5).

## II. Standard of Review

A party is entitled to summary judgment when the party can show that there is no genuine issue as to any material fact. FED.R.CIV.P. 56(c); *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458 (11th Cir. 1994). Which facts are material depends on the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991); *Watson v. Adecco Employment Svc., Inc.*, 252 F.Supp.2d 1347, 1352 (M.D.Fla.2003).

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the non-moving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (internal quotations and citation omitted). Thereafter, summary judgment is mandated against the non-moving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id.* at 322, 324–25, 106 S.Ct. 2548; *Watson*, 252 F.Supp.2d at 1352. The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value").

The Court must consider all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion, and resolve all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. The Court is not, however, required to accept all of the nonmovant's factual characterizations and legal arguments. *Beal*, 20 F.3d at 458–59. If material issues of fact exist, the Court must not decide them, but rather, must deny the motion and proceed to trial. *Herzog v. Castle Rock Entertainment*, 193 F.3d 1241, 1246 (11th Cir.1999).

## III. Legal Analysis

A claim for relief under 42 U.S.C. § 1983 (" § 1983") requires that Plaintiff allege the "deprivation of an actual constitutional right." *McElligott v. Foley*, 182 F.3d 1248, 1254 (11th Cir.1999). "It is well settled that the deliberate indifference to serious medical needs of prisoners" constitutes a violation of the 8th Amendment to the United States Constitu-

tion. *Id.* (internal citations omitted). Therefore, to establish a claim under § 1983, a plaintiff must present evidence of a(1) a serious medical need, (2) deliberate indifference to that need by the defendant, and (3) a causal connection between the defendant's deliberate indifference and plaintiff's injuries. *See Hatten v. Prison Health Services, Inc.*, 2006 U.S. Dist. LEXIS 65143, *11 (M.D.Fla. Sept. 13, 2006). This Court agrees with Judge Baker that "Plaintiff's gall bladder disease qualifies as a serious medical need." [1] (Doc. 137 at 9). Therefore, the Court will examine the issue of deliberate indifference.

■ "[D]eliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." *McElligott* at 1255. Plaintiff's complaints with regard to Halifax and Dr. Smyth essentially fall into two categories: pre-operative and post-operative care.

■ With regard to his pre-operative care, Plaintiff argues that the facts of this case are materially indistinguishable from the facts presented in *Blackmore v. Kalamazoo County*, 390 F.3d 890 (6th Cir. 2004), in which the Sixth Circuit reversed a district court's order granting summary judgment to the defendant county, sheriff and sheriff's deputies. While the *Blackmore* decision is not binding on this Court, it is highly persuasive in that it cites to, discusses and concurs with the Eleventh Circuit opinion in *Hill v. Dekalb Regional Youth Detention Ctr.*, 40 F.3d 1176, 1187

(11th Cir.1994). *Blackmore*, 390 F.3d at 897. The facts of *Blackmore* are as follows:

> Within an hour of his arrival, Blackmore began experiencing abdominal pain and complained to a deputy jailor, requesting medical care. Blackmore continued to complain about this pain. An entry in the Sergeant's jail log reflects that at 5:00 p.m. on Sunday, May 28, 2000, Blackmore was "complaining of abdominal pain". About that time, jail officials gave Blackmore antacids, but did not otherwise secure medical care.

> At some unidentified time on Monday, May 29, 2000, Blackmore filed a "Request for Medical Care" in which he complained of "sharp" and "extreme abdominal pain in the lower area" lasting twenty-six hours for which he needed medical attention "right away". A later entry in the Sergeant's jail log reflects: (1) that at 1:30 a.m., Blackmore "stated that he is having sharp abdominal pains;" (2) Blackmore "had vomited and the antacids that were given to him earlier did not help;" and (3) that Blackmore "stated that the pains have been constant since Saturday afternoon...." At this time, jail officials placed Blackmore into an observation cell, but did not provide any medical treatment. *Id.*

> At 6:30 a.m. Monday morning, over two complete days after his first complaint of pain, a jail nurse examined Blackmore and diagnosed him as "showing classic signs of appendicitis." Blackmore was transported to a local hospital at approximately 7:00 a.m., and an appendectomy

---

**1.** Judge Baker stated that Plaintiff is required to present "verifying medical evidence . . . to establish the detrimental effect of delay in medical treatment." (Doc. 137 at 9). This Court agrees with Plaintiff that such evidence is not required in cases such as this, where the serious medical need was obvious. *See*

*Hill v. Dekalb Regional Youth Detention Center*, 40 F.3d 1176, 1187–88 (11th Cir.1994); *Blackmore v. Kalamazoo County*, 390 F.3d 890, 897–98 (6th Cir.2004). Therefore, Plaintiff's failure to provide this Court with such medical evidence is not detrimental to his claim.

was successfully performed early that afternoon without complication.

*Blackmore,* 390 F.3d at 894.

The facts in *Blackmore* are similar to the facts at hand. Both plaintiffs complained of the same symptoms orally and in writing for two days, both plaintiffs were put in observation, and both plaintiffs were eventually transported to a hospital because for treatment. However, there is one major difference in the two cases that is material: Blackmore did not receive *any* medical attention for over 50 hours after he began complaining of his symptoms. It is clear from the discussion by the Sixth Circuit that this fact was material to its ultimate decision:

> Here, Blackmore alleges that he began to complain of stomach pain within an hour of his arrival in the early morning hours on Saturday, May 27. It is undisputed that Sergeant's Log entries at 5:00 p.m. on Sunday evening and at some point on Monday morning describe Blackmore as having "sharp abdominal pain." Other undisputed facts are that Blackmore was given antacids by non-medical prison officials, that Blackmore vomited, that he was placed in an observation cell, and that he did not receive any medical attention until 6:00 a.m. on Monday morning, over fifty hours after his arrest.

Viewing these facts in a light most favorable to the Plaintiff, we conclude that a reasonable jury could conclude that Defendants were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and the Defendants ignored that risk." *Farmer,* 511 U.S. at 837, 114 S.Ct. 1970. Thus, we agree with the district court that a material factual dispute exists on whether Defendants had a "sufficiently culpable state of mind" under the sub-jective prong of the "deliberate indifference" test.

*Blackmore,* 390 F.3d at 896.

Plaintiff complains that he should have been seen by a medical doctor, rather than simply a registered nurse. However, the fact remains that Plaintiff was provided with medical attention as soon as he began complaining of symptoms. The evidence shows that, while the medical care may not have been what Plaintiff desired, it did not rise to the level of deliberate indifference. Plaintiff was examined by a registered nurse immediately, who then sought advice from a Physician's Assistant. Plaintiff was kept in the infirmary, observed and offered a liquid diet which he initially refused. Plaintiff admits that on the morning of the 17th he was "feeling better though starved." This indicates that the medical staff had reason to believe his condition was improving. As soon as Plaintiff's symptoms worsened, Dr. Smyth was contacted and Plaintiff was taken to the emergency room at HMC. Therefore, with regard to Plaintiff's pre-operative care, this Court finds that Plaintiff has failed to present sufficient evidence of deliberate indifference.

As for Plaintiff's post-operative care, Plaintiff complains that he did not receive the treatment recommended by his surgeon. Plaintiff states that, even though he was kept in the infirmary for three days after his surgery, he did not receive his medication, his bandages were not changed and his prescribed diet was not implemented. Plaintiff states that the failure to provide him with his antibiotic and/or change his bandages resulted in an infection. Plaintiff further alleges that after being released back into general population, he was forced to clean the incision himself and was completely abandoned by the medical staff. Defendants contend that Plaintiff failed to show up for two

follow up appointments in the infirmary, however, Plaintiff states that he was not aware of any follow up appointments being scheduled. Taking the facts in the light most favorable to the Plaintiff, it appears that he was completely neglected in the days after his surgery. Therefore, Plaintiff has provided enough evidence to create a jury question as to deliberate indifference with regard to his post-operative care only.

### A) Dr. Smyth

■■ Plaintiff has not presented any evidence which would suggest that Dr. Smyth was deliberately indifferent to Plaintiff's serious medical needs. The doctrine of *respondeat superior* does not apply to claims arising under § 1983. *Engelleiter v. Brevard County Sheriff's Dept.*, 290 F.Supp.2d 1300, 1308 (M.D.Fla.2003). Therefore, Plaintiff must establish that Dr. Smyth was himself deliberately indifferent to Plaintiff's serious medical needs, not simply that the employees he supervised were deliberately indifferent. Plaintiff's allegations with regard to his post-operative care do not support anything more than mere negligence on the part of Dr. Smyth for failing to provide a low fat diet to Plaintiff and failing to advise VCDC staff of his work restrictions. Furthermore, Plaintiffs allegations regarding Dr. Smyth prescribing him Lortab and Tylenol for pain instead of Roxicet do not illustrate deliberate indifference. This decision was a medical decision made by Dr. Smyth that cannot be second-guessed by this Court.[2] Therefore, Defendant Smyth is entitled to summary judgment.

### B) Halifax

■ As discussed above, Plaintiff has provided sufficient evidence of deliberate indifference to create a jury question as to whether he suffered a constitutional deprivation at the hands of Halifax employees. However, this is not enough to establish a claim against Halifax because, as noted above, the doctrine of *respondeat superior* does not apply in this context. Therefore, Halifax's liability may only be established in one of four ways:

(1) the constitutional deprivation was caused by a policy or custom of the local governmental entity, or (2), the final policymakers of the local governmental entity acted with deliberate indifference to a constitutional deprivation, or (3) the final policymakers of the local governmental entity delegated their authority to a subordinate who, in turn, caused a constitutional deprivation, or (4) the final policymakers of the local governmental entity ratified a constitutionally impermissible decision or recommendation of a subordinate employee.

*Sherrod v. Palm Beach County School District*, 424 F.Supp.2d 1341, 1344 (S.D.Fla.2006).

■ A municipal policy or custom is "a persistent and wide-spread practice." *Church v. City of Huntsville*, 30 F.3d 1332, 1345 (11th Cir.1994). Plaintiff must establish, not only that the policy or custom existed but also that "actual or constructive knowledge of such custom" is attributable to government officials. *Id.* Therefore, "random acts or isolated incidents" are generally not enough to establish municipal liability. *Id.*

Plaintiff fails to allege or provide any evidence of any customs or policies regarding his post-operative care. Instead, Plaintiff makes several allegations that the

---

**2.** Lortab is a "combination of acetaminophen and hydrocodone [that] is used to relieve moderate to severe pain." Drugs.com, http:// www.drugs.com/lortab.html (last visited August 13, 2007).

staff at VCDC violated the policies of Halifax in failing to care for him properly after his operation. These isolated violations of policy do not support a claim against Halifax. Therefore, Halifax is entitled to summary judgment as well.

It is, therefore

**ORDERED** that:

1. The Objection to the Report and Recommendation is **OVERRULED** and the Recommendation of the Magistrate Judge is **AFFIRMED**;

2. The Defendants' Motion for Summary Judgment (Doc. 104) is **GRANTED.**

3. The Clerk is directed to enter Final Judgment in favor of Defendants John P. Smyth and Halifax Medical Center.

### REPORT AND RECOMMENDATION

BAKER, United States Magistrate Judge.

## TO THE UNITED STATES DISTRICT COURT

This cause came on for consideration without oral argument on the following motion filed herein:

> **MOTION: DEFENDANTS' (HALIFAX AND SMYTH) MOTION FOR SUMMARY JUDGMENT (Doc. No. 104)**
>
> **FILED:** March 12, 2007
>
> **THEREON** it is **RECOMMENDED** that the motion be **GRANTED.**

Plaintiff, currently incarcerated, sues these and other Defendants pursuant to 42 U.S.C. § 1983 for alleged violations of his civil rights arising out of a claimed withholding of medical attention and interference with prescribed medical treatment. According to the Third Amended Complaint (Doc. No. 39), Defendant Halifax

Medical Center (herein "Halifax") is a governmental entity which has contracted to "maintain responsibility in the provision of medical care to prisoners" in the custody of the Volusia County Corrections Department (Allegation 2). Defendant J.P. Smyth [1] ("Smyth") was, at the time of the events alleged, the Medical Director Physician and Supervisor of the jail's infirmary (Allegation 5). Plaintiff alleges that he was denied adequate medical care after becoming ill while incarcerated, and that certain Defendants failed to provide the post-operative medical care and treatment ordered by his physicians. According to Plaintiff's allegations, the failure resulted in physical injury and aggravation of his medical condition.

Halifax and Smyth move for summary judgment, attaching material purporting to be excerpts of Plaintiff's medical and inmate records, as well as the Affidavit of Eugene Crouch, M.D. and the Affidavit of Defendant Smyth (Doc. No. 104). Plaintiff has filed numerous responses (Doc. Nos. 111, 114, 116, and 133); Defendants have filed a response to the responses (Doc. No. 126); and Plaintiff has filed a rebuttal (Doc. No. 134). The Court finally put an end to the seemingly endless supplementation (Doc. No. 136), and the matter is now ripe for review.

### SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The Court should view the evidence and any inferences that may be drawn from it in the light most favorable to the non-mov-

---

**1.** Although Plaintiff spells Defendant's name "Smythe," Defendant points out that the correct spelling is "Smyth."(Doc. No. 104).

ant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### FACTUAL BACKGROUND

Defendants have tendered several exhibits which they represent to be excerpts of Plaintiff's medical records and inmate records (Doc. No. 104, Exhibit A). While certain factual disputes exist, addressed below, for present purposes, the *material* facts pertinent to this motion are undisputed.

Thomas J. Calhoun was received at the Volusia County Department of Corrections under the name of John Arthur Orr on May 6, 2006 [Exhibit A at 1]. On May 13, 2003, Plaintiff was given a physical examination by Samuel Montgomery, R.N., which revealed no medical issues [Exhibit A at 4]. Plaintiff was assessed as a "healthy male" and was released to "full work" status. *Id.*

Shortly thereafter, Plaintiff became ill. The exact date of onset of the illness is in dispute, with Plaintiff claiming that he became ill on May 16 and these Defendants relying on records which indicate an onset the morning of May 17. Regardless, it is not disputed that on the morning of May 17, 2003, Plaintiff submitted an Inmate Sick Call Request form stating that he was experiencing "either gall bladder or bowel movement problems, throwing up all night stomach pains clear to kidneys" [Exhibit A at 5]. Plaintiff was seen at the detention center medical clinic at approximately 06:00 on May 17, 2003, with complaints of vomiting blood with associated abdominal and flank pain. He was examined by Anita MacDonald, R.N. [Affidavit of Joseph Smyth, Doc. No. 104–9]. Upon examination, Plaintiff's abdomen was soft but tender to touch and he had slightly decreased bowels sounds in all four quadrants. Nurse MacDonald notified the on-call Physician's Assistant, R. Iskander, and he ordered that Plaintiff be held in the clinic for observation and placed on a clear liquid diet [Smyth Affidavit]. This direction was made "based on standing orders that [Smyth] had established within the clinic." [Smyth Affidavit].

Plaintiff did not experience any additional bouts of nausea or vomiting throughout the remainder of the day, and stated, at 15:44 on May 17, 2003, that "I feel fine now and I want some regular food." [Exhibit A at 7]. He was told that he could not receive solid food until the medical doctor confirmed that it was okay. Plaintiff eventually agreed to accept the prescribed liquid diet. By 20:10 on May 17, 2003, Plaintiff had not experienced any additional episodes of nausea, vomiting or abdominal pain. The notes indicate that he stated: "I haven't had more problems since I[sic] been here" and then requested "can I at least have some food in the morning" [Exhibit A at 8].

The following day, May 18 at 11:10, Plaintiff complained of vomiting and sharp pain and was examined by Sam Montgomery, R.N. He was found to have a flat, rigid abdomen with right sided tenderness and positive rebound. His bowel sounds were decreased and he was unable to lie flat [Exhibit A at 8]. Dr. Smyth was notified by telephone and he ordered that Plaintiff be immediately transferred to Halifax Medical Center to evaluate his pain and to rule out appendicitis [*Id.* and

Smyth Affidavit]. Plaintiff left for the hospital at 11:20, ten minutes later.

Plaintiff was examined at the Emergency Department at Halifax on May 18, 2003 [Exhibit A]. A CT scan of the abdomen and pelvis revealed a thickened gallbladder and Plaintiff was diagnosed with gallbladder disease. Dr. Peter Springer ordered that Plaintiff be admitted to the hospital and started on antibiotics, and a surgical consult was had [Exhibit A at 18–19]. According to the hospital records, a laparoscopic cholecystectomy was performed by Dr. Harold A. Fenster on May 22, 2003; four days after Plaintiff was admitted to the hospital [Exhibit A at 20–23]. Plaintiff disputes this, and contends that surgery was performed on May 20, two days after admission. [Doc. No. 134–3, Exhibit E]. Regardless, for present purposes, it is undisputed that Plaintiff underwent gallbladder surgery at least two days after admission.

Plaintiff was discharged from Halifax on May 22, 2003, with discharge instructions which included: "change dressing daily or as needed," "no lifting, carrying, or exercising for 2 months", and "low fat diet for 2 weeks than [sic] as tolerated." [Exhibit A at 24].[2] Plaintiff was also provided prescriptions for Roxicet, a narcotic pain medication and Cipro, an antibiotic. The Roxicet was to be taken every four to six hours as needed and the Cipro was to be taken twice per day for seven days. [Exhibit A at 24–26; Smyth Affidavit].

Plaintiff returned to the Volusia County Department of Corrections medical clinic at 18:00 on May 22, 2003 [Smyth Affidavit]. Dr. Smyth reviewed the discharge instructions and ordered the pain medication changed to Lortab, four times per day for three days. This medication was supplemented with Tylenol [Exhibit A at 8;

Smyth Affidavit]. Although Plaintiff appears to allege that he did not receive his medications, the Affidavits and the medical records indicate that Plaintiff received all of the prescribed doses of Cipro, Lortab and Tylenol [Exhibit A at 27]. By 20:40 on May 22, 2003, Plaintiff was asleep on his bunk and did not offer any special complaints when roused to check his vital signs [Exhibit A at 8].

Plaintiff remained in the clinic on May 23, 2003, whereupon his dressings were examined and found to be dry and intact. His vital signs remained normal throughout the day and he denied any pain or discomfort. [Exhibit A at 8]. At 08:20 on May 24, 2003, Plaintiff was again examined and found to have normal vital signs, bowel sounds in all four quadrants and a dry and intact surgical dressing [Exhibit A at 9]. He was reexamined at 20:45 that evening with no change in his condition. [Exhibit A at 9].

On May 25, 2003, at 08:40, Plaintiff was again examined. *Id.* All of his vital signs remained normal, and all of his dressings were dry and intact. Plaintiff voiced no complaints and exhibited no signs or symptoms of any distress. Plaintiff was discharged from the medical clinic and returned to the general population at 15:30 on May 25, 2003, with instructions to return to the clinic for followup. Plaintiff did not attend either follow up appointment [Exhibit A at 9].

### ISSUES AND ANALYSIS

As presented by Plaintiff, the issues are whether there is more than a scintilla of evidence that Halifax and Smyth: 1) "implemented policies and procedures which allowed unlicensed and non-physician persons to exercise full discretionary control

---

**2.** Plaintiff asserts that other jail employees, specifically Correctional Officer and co-De-

fendant Bispo, were not notified of these restrictions [Doc. No. 111–3].

over the medical care of prisoners in the infirmary" 2) denied Plaintiff adequate post operative treatment after surgery as a result of "rampant deficiencies in the operation of the infirmary" 3) "were aware of the understaffing of the infirmary" 4) "were aware of Plaintiff's post operative needs and failed to provide adequate post operative care" 5) "were aware they were placing the financial considerations of Halifax ahead of the medical needs" of prisoners, and 6) "failed to ensure that a qualified medical person was available to diagnose and treat Plaintiff promptly and visually, when the plaintiff manifested his illness." (Doc. No. 11). As is clear by a review of the applicable law, however, the issues are far simpler.

The Supreme Court set forth the standard for prison medical care in *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976): "deliberate indifference to [the] serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain … proscribed by the Eighth Amendment." However, it is clear that not every complaint by a prisoner regarding medical care rises to the level of a constitutional violation. *Id.* at 106, 97 S.Ct. 285. The inadvertent or negligent failure to provide adequate medical care "cannot be said to constitute 'an unnecessary and wanton infliction of pain.'" *Id.* at 105–06, 97 S.Ct. 285.

As recognized by the Eleventh Circuit Court of Appeals, to demonstrate deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and a subjective inquiry. *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir.2003). "First, a plaintiff must set forth evidence of an objectively serious medical need. Second, a plaintiff must prove that the prison official acted with an attitude of 'deliberate indifference' to that serious medical need." *Id.* (citations omitted).

The Eleventh Circuit has described a serious medical need as "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir.1994) abrogated on other grounds by *Hope v. Pelzer*, 536 U.S. 730, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) (quotation marks and internal citation omitted). In either situation, "the medical need must be one that, if left unattended, poses a substantial risk of serious harm." *Id.* (internal citation omitted).

Assuming a plaintiff can establish a serious medical condition, the next step requires a consideration of the subjective component, whether Defendants were deliberately indifferent to that serious medical need. To establish the requisite deliberate indifference, "the prisoner must prove three facts: (1) subjective knowledge of a risk of a serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence." *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir.2004) (internal citation omitted).

Viewed most liberally, Plaintiff asserts deliberate indifference in that: 1) he was attended to in the clinic by unqualified nurses and not doctors (alleged to be a violation of Halifax policies); 2) he was placed on a liquid diet and in isolation, without a doctor's personal examination to determine if this was appropriate (alleged to be due to a conscious failure to adequately staff the infirmary to deal with emergencies); 3) there was a failure to notify the Corrections staff of his physical restrictions following surgery, which led to an incident with a corrections officer; and 4) there was a failure to comply with the discharge instructions regarding his medications and changing of his surgical dressing. The Court finds that none of these

assertions is sufficient to establish a constitutional violation.

"Medical treatment violates the Eighth Amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" *Harris v. Thigpen,* 941 F.2d 1495, 1505 (11th Cir.1991) (internal citation omitted). As set forth above, to show an objectively serious deprivation of medical care, an inmate must demonstrate (1) an objectively serious medical need that, left unattended, poses a substantial risk of serious harm, and (2) that the response made by public officials to that need was poor enough to constitute "an unnecessary and wanton infliction of pain," and not merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law. *Taylor v. Adams,* 221 F.3d 1254, 1258 (11th Cir.2000) (internal citations omitted). To show the required "subjective intent to punish," a plaintiff must demonstrate that the public official acted with an attitude of deliberate indifference, by demonstrating (1) awareness of facts from which the inference could be drawn that a substantial risk of serious harm existed, and (2) the drawing of this inference. *Id., see also Salas v. Tillman,* 162 Fed.Appx. 918, *921–922 (11th Cir.(Ga.), 2006).

Here, while there is no doubt that Plaintiff's gallbladder disease qualifies as a serious medical need, there is no showing that he received deliberately indifferent care from these Defendants. Viewed liberally to Plaintiff, the medical record indicates that he was seen in the infirmary on the very day he sought assistance, he was treated conservatively, pursuant to standing orders issued by a physician, he appeared to get better, but relapsed the next day and was immediately transferred to the Hospital. Following surgery, he returned to the clinic, where he was monitored, given medication and his dressings were checked. While Plaintiff subjectively feels he did not receive adequate care in that he would have preferred a physician to examine him personally, and wanted his dressings changed (as opposed to checked), the issue is not whether *better* medical care could have been provided, but whether the medical care that *was* provided was adequate. *See Hamm v. DeKalb County,* 774 F.2d 1567, 1575 (11th Cir.1985) (Where an inmate receives adequate medical care, but desires different modes of treatment, the care provided does not amount to deliberate indifference.); *see also Adams v. Poag,* 61 F.3d 1537, 1545 (11th Cir.1995) ("[W]hether government actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for liability under the Eighth Amendment."). Here, the evidence of record, including the Affidavit of Drs. Smyth and Crouch, indicate that the medical care provided by the clinic was at all times at least adequate under this standard.

To the extent that Plaintiff contends that there was a delay in his diagnosis and thus, his treatment, the Eleventh Circuit has held:

> An inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed. Further ... the tolerable length of delay in providing medical attention depends on the nature of the medical need and the reason for the delay. Consequently, delay in medical treatment must be interpreted in the context of the seriousness of the medical need, deciding whether the delay wors-

ened the medical condition, and considering the reason for delay.

*Hill, supra,* 40 F.3d at 1188–89 (11th Cir. 1994) (internal citations, punctuation, and emphasis omitted). Applied here, Plaintiff places no such evidence in the record. Indeed, the medical record establishes that Plaintiff was seen in the Emergency Room on May 18, 2003, but did not undergo surgery until days later. Plaintiff establishes no worsening of his condition, nor any permanent injury that can be traced to a failure to immediately operate. Thus, there is nothing in the record to indicate that any delay on the part of the clinic or the Hospital was detrimental to Plaintiff's condition, nor that the delay was a result of deliberate indifference.

To the extent Plaintiff complains that these Defendants failed to properly communicate his post-surgery restrictions to other jail officials, such an allegation, without more, does not establish deliberate indifference to his medical needs. Even assuming that these Defendants had a duty to properly inform other officials of medical restrictions and that these Defendants breached that duty, there is no evidence from which a *purposeful* disregard can be inferred. "Mere incidents of negligence or malpractice do not rise to the level of constitutional violations." *Harris v. Thigpen,* 941 F.2d 1495, 1505 (11th Cir. 1991) (internal quotation omitted). Absent any evidence going to the subjective knowledge of Smyth or Halifax, any failure to communicate a restriction is equally consistent with mere inadvertence or negligence.

### CONCLUSION

Despite being given numerous opportunities to supplement the record, Plaintiff presents no *evidence* from which a jury could find that the conduct of these Defendants violated his constitutional rights. It is **respectfully recommended** that the motion be **granted.**

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.