*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 12a0153p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

JOSHUA REILLY,

               *Plaintiff-Appellee*,

     *v.*

SEETHA VADLAMUDI and PHILLIP PAYNE,
               *Defendants-Appellants,*

TERRY D. SMITH and CORRECTIONAL
MEDICAL SERVICES,

               *Defendants*.

No. 11-1252

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:09-cv-13832—Stephen J. Murphy III, District Judge.

Argued: April 12, 2012

Decided and Filed: May 25, 2012

Before: DAUGHTREY and ROGERS, Circuit Judges; ZOUHARY, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Clifton Schneider, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellants. Derek J. Brackon, McKEEN & ASSOCIATES, P.C., Detroit, Michigan, for Appellee. **ON BRIEF:** Clifton Schneider, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellants. Derek J. Brackon, McKEEN & ASSOCIATES, P.C., Detroit, Michigan, for Appellee.

_____

*The Honorable Jack Zouhary, United States District Judge for the Northern District of Ohio, sitting by designation.

---

**OPINION**

---

ZOUHARY, District Judge.   This is a prisoner civil rights action brought by Plaintiff-Appellee Joshua Reilly against the doctor and nurses who treated him in prison. Plaintiff began experiencing severe headaches and swelling in his left eye in 2007 while incarcerated at the Mound Correctional Facility in Detroit, Michigan.  In 2008, shortly after his release, Plaintiff was diagnosed with Ewing's Sarcoma, a serious form of bone cancer.  According to Plaintiff, surgery would have been sufficient to treat the disease had prison staff detected it earlier.  However, due to the late diagnosis, chemotherapy and radiation is now necessary.  This action claims Eighth Amendment violations under 42 U.S.C. § 1983 as well as medical malpractice under Michigan law.

Defendants, Dr. Seetha Vadlamudi and nurses Phillip Payne and Terry Smith, moved for judgment on the pleadings under Federal Civil Rule 12(c), asserting that they are immune from liability.  Following a hearing, the district court denied the motion, holding Plaintiff pled "sufficient facts upon which one could draw the inference that [Defendants] violated the Eighth Amendment and committed medical malpractice." Dr. Vadlamudi and nurse Payne filed this interlocutory appeal, arguing their involvement with Plaintiff was minimal and cannot form the basis for a finding of deliberate indifference or gross negligence.  Nurse Smith, who evaluated Plaintiff after eleven months of eye pain, severe headaches, and vomiting, did not join the appeal.

For reasons set forth below, we **REVERSE** and order the entry of judgment in favor of Dr. Vadlamudi and Payne.

**MEDICAL HISTORY**

Michigan prisoners are able to receive medical attention in prison by filing a "kite" request with the prison warden, who then refers the prisoner to a physician or nurse provided to the prison system by Correctional Medical Services, a Missouri

corporation. Plaintiff's medical history is laid out in some detail in the Complaint, as follows.

Plaintiff first requested medical assistance on February 13, 2007, reporting a headache and swelling over his left eye. He was referred to Dr. Vadlamudi, who recommended applying a warm compress to the eye. Three days later, Plaintiff was treated (records do not disclose by whom) for a headache and was told to take Tylenol and drink coffee. The Complaint does not indicate whether these remedies were effective in treating Plaintiff's pain in the short term.

On June 6, Plaintiff submitted another request, this time reporting a bump over his left eye. Payne examined Plaintiff, concluded the bump was an innocuous calcium nodule, and recommended no treatment. Plaintiff returned on July 8, but there is no indication who treated Plaintiff or what happened during this visit. Payne saw Plaintiff a second time on October 7, and referred him to an optometrist who prescribed eye drops and glasses. Finally, on December 27, Smith treated Plaintiff who relayed an eleven-month history of left eye problems. Smith noted a small nodule under Plaintiff's left brow, recommended he take Tylenol, and told him to report back if he experienced continued vomiting.

Soon after his consultation with Smith, Plaintiff was released from prison. He visited the Kellogg Eye Center at the University of Michigan for evaluation of the nodule above his eye and his headaches. A CT scan performed in April 2008 revealed the nodule was cancerous, and doctors ultimately diagnosed Plaintiff with Ewing's Sarcoma, a rare form of cancer that develops in bone or soft tissue.

The Complaint indicates Dr. Vadlamudi treated Plaintiff only once, and Plaintiff presented with no pre-existing condition. Further, Payne treated Plaintiff twice and referred him to an optometrist for further evaluation. These Defendants argue on appeal that their involvement with Plaintiff was minimal and cannot form the basis for a finding of deliberate indifference or gross negligence.

**ANALYSIS**

**Standard of Review**

This Court reviews a district court's denial of qualified immunity *de novo*. *Gregory v. City of Louisville*, 444 F.3d 725, 742 (6th Cir. 2006). The applicability of governmental immunity under Michigan law is also reviewed *de novo*. *Herman v. City of Detroit*, 680 N.W.2d 71, 74 (Mich. Ct. App. 2004). This interlocutory appeal is properly before this Court under 28 U.S.C. § 1291 because the denial of qualified immunity constitutes a "final decision" of a district court when, as here, it turns on pure issues of law. *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985); *see also Rich v. City of Mayfield Heights*, 955 F.2d 1092, 1094 (6th Cir. 1992) (holding denials "on the basis of qualified immunity are immediately appealable under the collateral order doctrine").

A district court's denial of a motion for judgment on the pleadings under Federal Civil Rule 12(c) is "analyzed under the same *de novo* standard as motions to dismiss pursuant to Rule 12(b)(6)." *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008). In scrutinizing a complaint under Rule 12(b)(6), this Court is required to "accept all well-pleaded factual allegations of the complaint as true and construe the complaint in the light most favorable to the plaintiff." *Dubay v. Wells*, 506 F.3d 422, 426 (6th Cir. 2007). Although a complaint need not contain "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, a complaint survives a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009). And, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Iqbal*, 129 S. Ct. at 1949).

**Section 1983 and Qualified Immunity**

Plaintiff argues Defendants are liable because their medical treatment—or failure to treat—amounted to "deliberate indifference" in violation of the Eighth Amendment. This claim arises under 42 U.S.C. § 1983, which creates a civil cause of action against individuals who, while acting under color of state law, deprive a person of the "rights, privileges or immunities secured by the Constitution or laws" of the United States. *See Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005); *Gregory*, 444 F.3d at 738. Section 1983 claims, however, are subject to the affirmative defense of qualified immunity which, if applicable, shields individuals not just against liability, but against the suit itself. *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009). The burden rests on Plaintiff to show Defendants are not entitled to immunity. *Untalan v. City of Lorain*, 430 F.3d 312, 314 (6th Cir. 2005).

Qualified immunity protects state officials, including prison employees, so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Cochran v. Gilliam*, 656 F.3d 300, 306 (6th Cir. 2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In resolving qualified immunity claims, we ask whether: (1) the facts, viewed in the light most favorable to Plaintiff, show a violation of a constitutional right; and (2) the right at issue was "clearly established" at the time of the alleged misconduct. *Id.* (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). While this Court can consider these prongs in either order, *Pearson*, 555 U.S. at 236, we do not need to reach the "clearly established" prong in this case because, as discussed below, there are no allegations of a constitutional violation.

### *Eighth Amendment Liability*

Plaintiff's constitutional claims under Section 1983 are based on alleged violations of the Eighth Amendment, which "forbids prison officials from 'unnecessarily and wantonly inflicting pain' on an inmate by acting with 'deliberate indifference'

toward [his] serious medical needs." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).[1]

The Eighth Amendment embodies "broad and idealistic concepts of dignity, civilized standards, humanity, and decency" against which courts must evaluate penal measures. *Estelle*, 429 U.S. at 102. "These elementary principles establish the government's obligation to provide medical care for those whom it is punishing by incarceration." *Id.* at 103. In *Wilson v. Seiter*, the Supreme Court set forth a two-step framework for determining whether certain conditions of confinement constitute "cruel and unusual punishment" prohibited by the Eighth Amendment. 501 U.S. 294, 298 (1991). That framework consists of an objective and a subjective component. *Blackmore*, 390 F.3d at 895.

First, Plaintiff must plead facts which, if true, establish the existence of a "sufficiently serious" medical need. *Id.* Seriousness is measured objectively, in response to "contemporary standards of decency." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (citing *Estelle*, 429 U.S. at 103). Essentially, a prisoner "must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

Second, Plaintiff must establish the subjective element: he must demonstrate Defendants acted with "a sufficiently culpable state of mind in denying medical care." *Blackmore*, 390 F.3d at 895. Only "deliberate indifference" to serious medical needs will implicate the protections of the Eighth Amendment. Deliberate indifference is characterized by obduracy or wantonness—it cannot be predicated on negligence, inadvertence, or good faith error. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). For liability to attach, Defendants must have been "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]." *Farmer*, 511 U.S. at 837. Indeed, "[k]nowledge of the asserted serious needs or of circumstances clearly

---

[1]The Complaint does not allege a specific constitutional violation; it merely states "the gross negligence and breaches of care . . . resulted in a violation of [Plaintiff's] constitutional rights set forth by 42 USC 1983." As the district court recognized, if Plaintiff has a Section 1983 claim, it necessarily falls under the "deliberate indifference" strain of the Supreme Court's Eighth Amendment jurisprudence.

indicating the existence of such needs, is essential to a finding of deliberate indifference." *Blackmore*, 390 F.3d at 896.

In the medical context, the Supreme Court emphasized that "an inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.'" *Estelle*, 429 U.S. at 105–06. Therefore, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Id.* To state a cognizable claim, Plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs"—indifference that offends the "evolving standards of decency" under the Eighth Amendment. *Estelle*, 429 U.S. at 106.

### The Complaint Does Not Support a Constitutional Violation

In the proceedings below, the parties agreed that Plaintiff's condition meets the objective component of his claim. We also agree. There is no doubt that a rare and potentially fatal form of cancer meets the objective criteria of an Eighth Amendment claim. *See, e.g.*, *Jones v. Muskegon County*, 625 F.3d 935, 942 (6th Cir. 2010) (holding colorectal cancer is a "sufficiently serious medical need"). The remaining issue becomes whether the Complaint supports Plaintiff's claim that Defendants Dr. Vadlamudi and Payne acted with deliberate indifference to his medical needs.

Because it is well-settled that qualified immunity must be assessed in the context of each individual's specific conduct, this Court analyzes separately the allegations concerning the conduct of each Defendant. *See Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011); *see also Iqbal*, 129 S. Ct. at 1948 ("[A] plaintiff must plead that each Government-official defendant, through the official's *own individual actions*, has violated the Constitution.") (emphasis added).

Dr. Vadlamudi

Plaintiff paid a single visit to Dr. Vadlamudi in February 2007. During that visit, Dr. Vadlamudi examined Plaintiff for a headache and left-eye swelling. Plaintiff reported no history of headaches or swelling, nor any other continuous symptoms. Based on these minimal symptoms, Dr. Vadlamudi administered warm compresses to the left eye. Plaintiff alleges no further contact with the doctor.

In denying Defendants' motion, the district court relied on *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999). But the facts of that case are not analogous. Defendants in *McElligott*—also a doctor and nurse—were both aware of the prisoner's ongoing complaints of abdominal pain for a period of five months. The doctor's treatment notes reflected "he was aware that [plaintiff] was suffering from serious abdominal pain." *Id.* at 1256. Defendants were "aware that plaintiff's condition was, in fact, deteriorating, and still did nothing to treat this deteriorating state." *Id.* at 1259. The medication "was not treating the severe pain [plaintiff] was experiencing," yet defendants "did nothing to treat [him]." *Id.* at 1257. The court held "[a] jury could infer deliberate indifference from the fact that [defendants] knew the extent of [plaintiff's] pain, knew that the course of treatment was largely ineffective, and declined to do anything more to attempt to improve [his] condition." *Id.* at 1257–58 (citation omitted).

Here, there are no allegations that Dr. Vadlamudi knew of a serious condition, or of circumstances clearly indicating such condition, which "is essential to a finding of deliberate indifference." *Blackmore*, 390 F.3d at 896. Indeed, the linchpin in *McElligott* was defendants' awareness coupled with their disregard of the prisoner's deteriorating and serious condition. Even so, *McElligott* recognized defendants could not be held liable for failing to diagnose what turned out to be a serious case of colon cancer. 182 F.3d at 1256. That failure could only be deemed "extremely negligent," not deliberate indifference. *Id.*

Here, Dr. Vadlamudi had a lone contact with Plaintiff, with no history of any symptoms suggesting cancer. The Complaint alleges Dr. Vadlamudi failed to: "[o]btain and appreciate an appropriate [medical] history;" "obtain appropriate diagnostic

studies;" "include malignant tumor in the [] diagnosis;" "promptly refer [Plaintiff] to or consult with [a] . . . specialist;" "provide timely . . . medical care;" and ensure Plaintiff "is evaluated by a physician." These allegations may support a claim for professional negligence, but under established law, deliberate indifference "entails something more than mere negligence." *Blackmore*, 390 F.3d at 895 (quoting *Farmer*, 511 U.S. at 835); *see also Estelle*, 429 U.S. at 105–06. Absent allegations that Dr. Vadlamudi was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]," and that he actually "[drew] the inference," Plaintiff's Eighth Amendment claim cannot survive. *Farmer*, 511 U.S. at 837.

This conclusion is supported by *Sanderfer v. Nichols*, a case that, while resolved on summary judgment, is strikingly similar to this case. 62 F.3d 151, 154 (6th Cir. 1995). Much like Plaintiff here, the plaintiff in *Sanderfer* alleged the defendant failed to: review his medical history; discover a serious medical need; recognize he should have been referred to a specialist; restrict his activities to those appropriate for one with his condition; and prescribe appropriate medication. *Id.* at 154. Plaintiff suffered a heart attack and died in jail. *Id.* at 153. In reversing the district court's denial of qualified immunity, we held the defendant "obviously was not aware that [plaintiff] was at a substantial risk of heart failure" and "could not be 'deliberately indifferent' to this risk when she made her diagnosis." *Id.* at 155. Because the record did not show defendant was aware "of facts from which she could and did draw the inference that her conduct posed a substantial risk of serious harm," qualified immunity was appropriate. *Id.*

To be sure, in hindsight, looking at Plaintiff's *subsequent* medical history, additional treatment may have been appropriate in this case. However, when Dr. Vadlamudi treated Plaintiff, there was no indication he was suffering from a rare form of bone cancer—only minor symptoms. Simply put, the Complaint, construed in a light most favorable to Plaintiff, does not contain sufficient facts to support the claim that Dr. Vadlamudi unnecessarily and wantonly inflicted pain by acting with deliberate indifference toward his serious medical needs.

Nurse Payne

Plaintiff's Eighth Amendment claim against Payne fails for the same reasons explained above. Payne examined Plaintiff twice: once in June 2007, and then again in October 2007. During Plaintiff's first visit, Payne "noted a small raised area over the left eye," which he described "as a soft nodule, appearing to be a calcium deposit." This diagnosis warranted no treatment. There are no allegations from which it can be inferred Payne was, or should have been, aware of a serious medical condition. Plaintiff had not visited Payne before, did not tell Payne about prolonged or continuous symptoms, and never previously complained "of a bump over the left eye"—only of headaches and eye swelling.

Approximately four months later, Plaintiff, complaining of "left eye ball pain," made a second visit to Payne. Plaintiff claims Payne took "no steps" during this visit to ensure Plaintiff was evaluated by a capable professional who could determine a course of treatment for his condition. But that claim is contradicted by the Complaint. Payne made a referral to an optometrist—a specialist—to assess the complaint of eyeball pain. While Payne's referral to an optometrist, instead of some other specialist, could be characterized as negligent, it does not satisfy the standard of deliberate indifference. As Plaintiff conceded during oral argument, optometrists are health care professionals capable of identifying health problems of the eye. Therefore, even if the optometrist was himself incapable of treating Plaintiff's ultimate condition, Payne's good-faith referral does not amount to deliberate indifference. Indeed, none of the allegations against Payne demonstrate an act or omission "sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106.

In denying Payne's motion, the district court appears to have imputed knowledge of Plaintiff's entire set of complaints to Payne (as well as to Dr. Vadlamudi). But Plaintiff's most severe symptoms occurred *after* his contacts with these Defendants. Further, Plaintiff must state a plausible constitutional violation against each individual defendant—the collective acts of defendants cannot be ascribed to each individual defendant. *See Heyne*, 655 F.3d at 564; *Iqbal*, 129 S. Ct. at 1948. While the Mound

Correctional Facility may have been aware of Plaintiff's entire medical history, there are no allegations that Payne was aware. In fact, the only allegations against Payne are the failure to "[o]btain and appreciate an appropriate [medical] history;" "[r]efrain from diagnosing a calcium deposit;" and ensure Plaintiff "is evaluated by a physician."[2] As was the case with Dr. Vadlamudi, such allegations might support negligence, but not an Eighth Amendment violation. *Estelle*, 429 U.S. at 105–06.

### Immunity Under Michigan Law and the "Gross Negligence" Standard

Michigan law offers government employees immunity from tort liability under certain circumstances. MICH. COMP. LAWS § 691.1407(2). Defendants are immune from liability if they acted or reasonably believed they acted within the scope of their employment, engaged in the discharge of a government function, and their "conduct [did] not amount to gross negligence that [was] the proximate cause of the injury or damage." *Id.* Therefore, the question is whether the Complaint contains "sufficient factual matter" allowing this Court to draw a reasonable inference that Defendants committed gross negligence, proximately causing Plaintiff's injuries. *Iqbal*, 129 S. Ct. at 1949.

While the federal standard for deliberate indifference appears to be similar to Michigan's standard for gross negligence, we have clarified that they are different. *See Jones*, 625 F.3d at 947. Specifically, deliberate indifference is "akin to criminal recklessness," a very high standard of culpability that exceeds gross negligence. *Id.* The Michigan Supreme Court held gross negligence is "akin to willful, wanton, or reckless misconduct." *Dedes v. Asch*, 521 N.W.2d 488, 493 (Mich. 1999). "[E]vidence of ordinary negligence does not create a material question of fact concerning gross negligence." *Maiden v. Rozwood*, 597 N.W.2d 817, 824 (Mich. 1999). A valid claim for gross negligence requires "proof of conduct 'so reckless as to demonstrate a

---

[2]In Count II of his Complaint, Plaintiff also alleges Payne "owed a duty" to "[r]efrain from repeatedly prescribing and/or dispensing Tylenol . . . " That allegation, however, is unsupported by the same Complaint. Payne did not prescribe any treatment. The Tylenol was prescribed by "an unidentified person" who examined Plaintiff three days after Dr. Vadlamudi's examination, as well as by nurse Smith who is not a party on appeal.

substantial lack of concern for whether an injury results.'"  *Id.*  (citing MICH. COMP.
LAWS § 691.1407(7)(a)).  For that reason:

> Simply alleging that an actor could have done more is insufficient under
> Michigan law, because, with the benefit of hindsight, a claim can always
> be made that extra precautions could have influenced the result.
> However, saying [Defendants] could have taken additional precautions
> is insufficient to find ordinary negligence, much less recklessness.  Even
> the most exacting standard of conduct, the negligence standard, does not
> require one to exhaust every conceivable precaution to be considered not
> negligent.    The much less demanding standard of care–gross
> negligence–suggests, instead, almost a willful disregard of precautions
> or measures to attend to safety and a singular disregard for substantial
> risks.  It is as though, if an objective observer watched the actor, he could
> conclude, reasonably, that the actor simply did not care about the safety
> or welfare of those in his charge.

*Tarlea v. Crabtree*, 687 N.W.2d 333, 339 (Mich. Ct. App. 2004).

### *Defendants' Alleged Treatment Does Not Amount to Gross Negligence*

It is improper to consider all the facts of this case together as a whole, holding
each Defendant potentially liable for every alleged action, irrespective of their individual
involvement.  When each Defendant's conduct is separately analyzed, the allegations of
gross negligence fail.

The Complaint makes clear that Dr. Vadlamudi examined Plaintiff *ten months*
before his complaints of severe "headaches that cause[d] him to vomit."  During Dr.
Vadlamudi's single contact with Plaintiff, Plaintiff had a headache and left eye swelling
and no other symptoms.  This hardly forms the basis for Dr. Vadlamudi to diagnose
cancer.  These minor symptoms cannot, as a matter of law, support a claim for willful,
wanton, or reckless treatment.  No objective observer could reasonably conclude Dr.
Vadlamudi "simply did not care about the safety or welfare of" Plaintiff.  *Tarlea*, 687
N.W.2d at 339.

Similarly, there are no allegations that Payne demonstrated "a substantial lack
of concern for whether an injury result[ed]" to Plaintiff.  *Id.* at 335.  Payne examined
Plaintiff for a small raised area over his left eye that Payne believed to be a benign

calcium deposit. During his second visit with Payne, Plaintiff complained of eyeball pain. Had Payne done nothing at this point, Plaintiff's claim *might* be more compelling. However, Payne did not willfully disregard Plaintiff's safety. To the contrary, he referred him to an optometrist. As with Dr. Vadlamudi, nothing leads to the conclusion that Payne "simply did not care about [Plaintiff's] safety or welfare." *Id.* at 339.

In their motion to the district court, Defendants relied on *Jackson v. County of Saginaw*, a Michigan Supreme Court case holding summary judgment was appropriate on a prisoner's claim that medical staff failed to diagnose his throat cancer. 580 N.W.2d 870 (Mich. 1998). The court below declined to rely on *Jackson* because it was decided after discovery and not during the pleadings stage. That distinction, while important, does not dictate a different outcome. The lengthy allegations in the Complaint in this case similarly cannot support a finding of gross negligence.

## CONCLUSION

The district court understandably struggled with granting Defendants immunity at an early stage in the litigation. However, as previously emphasized, the purpose of qualified immunity is "to ensure that insubstantial claims against government officials are resolved at the earliest possible stage in litigation." *See Rondigo, LLC v. Twp. of Richmond*, 641 F.3d 673, 681 (6th Cir. 2011) (citing *Pearson*, 555 U.S. at 231 (holding the "driving force" behind qualified immunity is the desire to resolve insubstantial claims against government officials "prior to discovery")). For that reason, district courts in some cases "will be able to establish entitlement to qualified immunity . . . even before discovery." *Hunter v. Bryant*, 502 U.S. 224, 234 (1991). This is one of those cases.

A thorough review of the pleadings reveals that Dr. Vadlamudi and nurse Payne may have been negligent in diagnosing or treating Plaintiff. However, neither negligent medical care, nor the delay in providing medical care, can rise to the level of a constitutional violation absent specific allegations of sufficiently harmful acts or omissions reflecting deliberate indifference. Likewise, a valid claim for gross negligence under Michigan law requires allegations of conduct "akin to willful, wanton,

or reckless misconduct."   Here, there are no such allegations, and judgment on the pleadings is appropriate.

Accordingly, we **REVERSE** the district court's denial of immunity and remand for entry of judgment in favor of Defendants Vadlamudi and Payne.