NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0429n.06

No. 20-3587

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Sep 13, 2021
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| TED PALLADENO, | ) | |
| | ) | |
| **Plaintiff-Appellant,** | ) | |
| | ) | **ON APPEAL** FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE NORTHERN |
| GARY C. MOHR; ROGER WILSON; | ) | DISTRICT OF OHIO |
| ROBERT HAMMOND; JOHN DESMARAIS; | ) | |
| BRIAN WITTRUP; CYNTHIA B. MAUSSER; | ) | **OPINION** |
| GINNY LAMNECK; KIMBERLY CLIPPER; | ) | |
| KEVIN JONES; DONALD MORGAN; | ) | |
| WARDEN JOHN COLEMAN; TERRY COLLINS; | ) | |
| JOHN DOE, 1-99, | ) | |
| | ) | |
| **Defendants-Appellees,** | ) | |
| | ) | |
| STATE OF OHIO, | ) | |
| | ) | |
| **Interested Party-Appellee.** | ) | |
| | ) | |

BEFORE: NORRIS, KETHLEDGE, and NALBANDIAN, Circuit Judges.

**ALAN E. NORRIS, Circuit Judge.** Plaintiff Ted Palladeno is a prisoner in the custody of the Ohio Department of Rehabilitation and Correction (ODRC). He filed an eighty-five-count suit against several named Ohio prison officials and ninety-nine "John Doe" defendants. The district court dismissed the suit on its pleadings and two of his claims are before us on appeal: (1) deliberate indifference to a serious medical need under the Eighth Amendment and (2) violation of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132. For the reasons that follow, we affirm.

**I.**

Plaintiff has been incarcerated in various Ohio Department of Rehabilitation and Correction ("ODRC") facilities, and during the periods relevant to this litigation he was held in protective custody.[1]

In November 2016, plaintiff filed a pro se complaint in the Southern District of Ohio, along with motions (1) to proceed in forma pauperis, (2) to appoint counsel, (3) to certify the case as a class action, (4) for a preliminary injunction, (5) for prisoner release orders, and (6) to seal portions of the complaint. The court granted in forma pauperis status and the motion to seal, denied all other motions, and directed plaintiff to file an amended complaint because a prisoner proceeding pro se cannot represent other prisoners in a federal class action.

Plaintiff obtained counsel and filed a nearly identical amended complaint, still in the form of a class action with more than 100 class representatives. The case was eventually transferred to the Northern District of Ohio because plaintiff was an inmate at a federal facility in Toledo.

The district court granted a motion to dismiss all claims, which was filed by the State of Ohio as an interested party. Because the alleged injuries were a series of individual claims, rather than claims common to the named plaintiffs, the court dismissed eighty-one of the eighty-five counts due to misjoinder under Fed. R. Civ. P. 20 & 21. The court dismissed the remaining four claims, which were personal to plaintiff, for failure to state a claim. Plaintiff appeals the dismissal of two of those four claims: (1) deliberate indifference to a serious medical need in violation of the Eighth Amendment and (2) violation of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132.

---

[1] *See* Ohio Admin. Code 5120-9-14(A) ("[P]rotective control areas shall be used to house inmates that, due to personal physical safety concerns, need to be separated from the general inmate population.").

Plaintiff's claim of deliberate indifference to his serious medical need arises out of his time

at Toledo Correctional Institution ("ToCI"). In support of that claim, plaintiff alleges in the

amended complaint:

> Plaintiff Palladeno has consistently been told by specialists outside of the ODRC that he must be provided a walking cane, the medications Nuerontin and Tramadol, as was the recommendation in a teleconference with an Ohio State University Neurologist on July 15, 2015. Palladeno suffers from Neuropathy, a condition affecting his L4 and L5 vertebrae, as well as his S1 nerve (all in his lower back area). The ODRC has treated his condition (on and off) for years, however ToCI refuses to provide the treatment recommended by the OSU Neurologist, which is (in general) the same treatment intermittently provided by the ODRC over the years. Without treatment, Palladeno's legs will periodically (and without warning) go numb and fail to support him. Palladeno has suffered very serious injuries on several occasions due to falls occurring as a direct and proximate result of the ODRC's failure to provide treatment for his serious medical need. The most recent fall was down a sixteen-riser metal tread stair on February 1, 2016, between 1:00-1:30 P.M. in Unit B-1 and 2 East. After several MRI's and a Cat scan, St. Vincent's treated Palladeno by providing a cane, and the medication Lyrica. Upon returning to ToCI, both the medication and the use of the cane was discontinued.

Compl. ¶50.

His ADA claim also relates to his back condition but arises from his time at Oakwood

Correctional Facility. The amended complaint states:

> Plaintiffs contend that the PC prisoners with elevator passes (because they have physical disabilities that render them unable to use the stairs) have no means to exit the structure if there was a fire, which violates not only the Eighth and Fourteenth Amendments, but also the Americans with Disabilities Act. This is so because the affected Plaintiffs (Buck, Metcalf, Palladeno, and others similarly situated) were required to have medications and meals brought to their cells during the roughly six-month period when the elevator was being replaced. Clearly if they were unable to walk down the steps from the second floor to get medication and meals, then they would also be unable to use the fire exit stairs in a fire. Further, these Plaintiffs were precluded from going to the library, law library, visiting room, recreation, etc., during this time period because all are located on the first floor.

Regardless, grievances were filed specifically advising Defendants of the risk of death if there were a fire, however no measures were taken to abate the risk.[2]

Compl. ¶84.

## II.

This court reviews de novo the grant of a motion to dismiss for failure to state a claim. *Rudd v. City of Norton Shores*, 977 F.3d 503, 511 (6th Cir. 2020). For a complaint to survive a motion to dismiss requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). On review, we accept a complaint's factual allegations as true, draw all reasonable inferences in plaintiff's favor, and consider those facts and inferences to determine whether the claim plausibly entitles plaintiff to relief. *Doe v. Baum*, 903 F.3d 575, 581 (6th Cir. 2018) (citations omitted).

### A.

The Eighth Amendment "'forbids prison officials from unnecessarily and wantonly inflicting pain on an inmate by acting with deliberate indifference toward'" an inmate's serious medical needs. *Reilly v. Vadlamudi*, 680 F.3d 617, 623 (6th Cir. 2012) (quoting *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004)). Such a claim "contains both an objective component—a 'sufficiently serious medical need'—and a subjective component—a 'sufficiently culpable state of mind.'" *Griffith v. Franklin Cnty., Ky.*, 975 F.3d 554, 567 (6th Cir. 2020) (quoting *Blackmore*, 390 F.3d at 895).

"A sufficiently serious medical need 'is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Id.* (quoting *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir.

---

[2] Though the paragraph contains references to other "plaintiffs" alleged to be affected, only the facts specific to Palladeno are relevant on appeal.

2008)). To satisfy the subjective prong, a culpable state of mind, a plaintiff "'must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs'— indifference that offends the 'evolving standards of decency' under the Eighth Amendment." *Reilly*, 680 F.3d at 624 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). That requires a showing that one or more prison officials had "a sufficiently culpable state of mind." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

"Persons sued in their individual capacities under § 1983 can be held liable based only on their own unconstitutional behavior." *Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012). To the extent that a plaintiff seeks to hold defendants liable as supervisors in their individual capacities, he must show they "either encouraged the specific incident of misconduct or in some other way directly participated in it." *Id.* (quoting *Hays v. Jefferson Cnty.*, 668 F.2d 869, 874 (6th Cir. 1982)). A plaintiff must set forth facts that allege "that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Id.*

Like the district court, we accept that plaintiff has satisfied the first prong—that plaintiff has a serious medical need. But the complaint fails to make an allegation against *any* defendant, either named or a John Doe,[3] who acted with deliberate indifference in withholding treatment. In

---

[3] The presence of John Doe defendants is not fatal to a claim. "Although designation of a 'John Doe' defendant is not favored in the federal courts, it is permissible when the identity of the alleged defendant is not known at the time the complaint is filed and plaintiff could identify defendant through discovery." *Yates v. Young*, 772 F.2d 909 (6th Cir. 1985) (unpublished table decision) (citing *Schiff v. Kennedy*, 691 F.2d 196, 198 (4th Cir. 1982)); *see also Oruche v. Ficano*, 165 F.3d 28 (6th Cir. 1998) (unpublished table decision) (holding that the district court abused its discretion granting summary judgment before allowing plaintiff to learn the identity of John Doe defendants through discovery); *Mason v. Doe No. 1*, No. 3:12CV-P794-H, 2013 WL 1152029, at *3 (W.D. Ky. Mar. 19, 2013) (allowing medical claim to proceed against "Doe" defendants).

fact the complaint never alleges any wrongful conduct by anyone that is causally connected to the violation alleged. *See Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016). Instead plaintiff concedes in the complaint that the treatment of his neuropathy has been on-again, off-again, and it speaks of institutions and otherwise alleges facts in the passive voice. Though we draw all *reasonable* inferences in favor of plaintiff, we cannot fill gaps of this size.

The complaint was not clear, but if plaintiff intended to allege that one of the named defendants was responsible in a supervisory capacity, the complaint needed to set forth facts alleging "that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Heyerman*, 680 F.3d at 647.

The district court did not err in concluding that plaintiff failed to state a claim under the Eighth Amendment.

**B.**

Title II of the ADA provides that no qualified individual with a disability shall, because of that disability, "be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. And the ADA applies to state prisons. *Mingus v. Butler*, 591 F.3d 474, 481-82 (6th Cir. 2010) (citing *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 209-10 (1998)). To establish a claim for intentional discrimination, a plaintiff must show that he or she: (1) is an otherwise qualified individual with a disability; (2) was excluded from participation in a public entity's services, programs, or activities; and (3) such exclusion was due to the disability. *Anderson v. City of Blue Ash*, 798 F.3d 338, 357 (6th Cir. 2015).

"Two types of claims are cognizable under Title II: claims for intentional discrimination and claims for a reasonable accommodation." *Roell v. Hamilton Cnty.*, 870 F.3d 471, 488 (6th Cir.

6

2017) (citing *Ability Ctr. of Greater Toledo v. City of Sandusky*, 385 F.3d 901, 907 (6th Cir. 2004)). It is not clear from the complaint which type plaintiff alleges. On appeal plaintiff asserts that the complaint alleges facts sufficient for both types. We disagree.

Though the state argues otherwise, we assume for the sake of argument that plaintiff has a disability and was excluded from certain services. However, for intentional discrimination, the third prong requires a plaintiff to show that "the discrimination was *intentionally* directed toward him or her in particular." *Anderson*, 798 F.3d at 357 (quoting *Tucker v. Tennessee*, 539 F.3d 526, 532 (6th Cir. 2008)). "Acts and omissions which have a disparate impact on disabled persons in general are not specific acts of intentional discrimination against the plaintiff in particular." *Dillery v. City of Sandusky*, 398 F.3d 562, 568 (6th Cir. 2005) (abrogated on other grounds) (cleaned up). All of the PC units were located on the second floor of the Oakwood facility. Plaintiff did not allege that he requested to be housed on the first floor and was refused, nor any other facts to support an allegation that plaintiff was singled out for discrimination on account of his disability. The failure of prison officials to transfer him sua sponte during elevator maintenance that affected all inmates does not amount to intentional discrimination solely because of his disability.

If plaintiff intended to raise a failure-to-accommodate claim, it was woefully undeveloped. "[A] pro se complaint is to be liberally construed and, 'however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). But this complaint, filed through counsel, only referenced the ADA one time, and it was not addressed by the parties in their motion-to-dismiss filings. On appeal, plaintiff cites two regulations that implement Title II: 28 C.F.R. § 35.130(b)(7)(i), which requires a public entity to make "reasonable modifications" to its "policies, practices, or procedures when the modifications are necessary to

avoid discrimination" based on disability; and 28 C.F.R. § 35.152(b)(3), which requires public entities to "implement reasonable policies . . . so as to ensure that each inmate with a disability is housed in a cell with the accessible elements necessary to afford the inmate access to safe, appropriate housing." The argument still seems to be that one or both of those regulations create an affirmative duty for prison officials not to discriminate and therefore the prison officials' failure to follow those regulations constitutes intentional discrimination. But plaintiff's intentional discrimination claim fails for the reasons outlined above.

If the plaintiff intended a reasonable-accommodation claim, it is not enough to cite those regulations in a conclusory way. Plaintiff states that the refusal to accommodate plaintiff's disability is prohibited disability discrimination, but "it is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones." *Courser v. Allard*, 969 F.3d 604, 616 (6th Cir. 2020) (quotation omitted) (cleaned up).

It also cuts against plaintiff that the alleged discrimination was due to a *temporary* breakdown of the elevator. "The responsible public entity must maintain accessibility features in operative condition, it must repair them promptly if they malfunction, and it must take reasonable steps to accommodate an individual who otherwise would have used the features when they are out of order." *Mote v. City of Chelsea*, 391 F. Supp. 3d 720, 744 (E.D. Mich. 2019) (citing *Foley v. City of Lafayette*, 359 F.3d 925, 929 (7th Cir. 2004)) (cleaned up and internal quotations omitted). But there is no such liability "for isolated or temporary interruptions in service due to repairs." *Id.* Plaintiff may have been temporarily deprived of certain services, but he also admitted that prison officials made some efforts at accommodation—bringing meals and medicine to his cell while the elevator was being repaired.

With respect to plaintiff's fire-safety allegation, it is true that prisons must "ensure that each inmate with a disability is housed in a cell with the accessible elements necessary to afford the inmate access to safe, appropriate housing." 28 C.F.R. § 35.152(b)(3). But plaintiff cannot establish any claim for monetary relief because he fails to allege he suffered actual harm; instead, he alleges only that the potential for harm existed. And to the extent plaintiff seeks prospective relief, the claim is moot because he has been moved to a different facility. *See Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996).

Plaintiff argues that his claims satisfy the "capable of repetition yet evading review" exception to the mootness doctrine. This exception applies "where (1) the challenged action is too short to be fully litigated prior to its cessation or expiration; and (2) there is a reasonable expectation that the same complaining party would be subjected to the same action again." *Thomas Sysco Food Servs. v. Martin*, 983 F.2d 60, 62 (6th Cir. 1993). "The party asserting that this exception applies bears the burden of establishing both prongs." *Lawrence v. Blackwell*, 430 F.3d 368, 371 (6th Cir. 2005). Though plaintiff notes that he has frequently been housed on the second floor at various facilities, and is indeed housed on the second floor of his current facility, there is no reason to expect that he will again be left without an elevator or other accommodation. *See Grendell v. Ohio Sup. Ct.*, 252 F.3d 828, 833 (6th Cir. 2001) ("[W]here the threat of repeated injury is speculative or tenuous, there is no standing to seek injunctive relief.").

The district court did not err in concluding that plaintiff failed to state a claim under the ADA.

## III.

Accordingly, we **affirm** the judgment of the district court.